LOVERIN & BROWN COMPANY *v.* E. E. TÁNSIL *et al.*

|(*Jackson.*   April Term, 1907.)

**INTERSTATE COMMERCE.**  Mercantile corporation of another
State is engaged in commerce here, and not in interstate com-
merce, and is subject to  privilege tax as a merchant, when.

A mercantile corporation of another State is not engaged in
interstate commerce, but in commerce within this State, and
in the business of a retail merchant in the county and town
in which the transactions are made, rendering it liable for the
privilege tax imposed upon retail merchants, where a solic-
iting salesman representing such corporation procures orders
for merchandise, to be paid for upon  delivery, if found  as
represented; and after the canvass of the community is com-
pleted, the salesman classifies the merchandise contracted for
in the several individual orders obtained, ascertains the ag-
gregate number or quantity of each article, and sends to
the said corporator, his employer, one general  order  cov-
ering the aggregate number or quantity of articles of each
class; and the goods thus ordered are packed and shipped in
bulk, in unidentified packages consisting of large boxes and
barrels, not segregated from others of like kind, nor ap-
propriated to any particular purchaser, and remaining the
porperty of the seller until the original packages are broken,
and the articles are selected and delivered, and the sale con-
summated in this State by said salesman, by delivery to
the purchasers upon the payment of the purchase price, for
the purpose of completing the transactions, the goods are
shipped by a common carrier to the corporation at a point
designated by the salesman, to whom the bill of lading is
sent, and upon receipt of the goods, the barrels and boxes
are opened, and the goods classified and arranged for de-
livery to the purchasers; and the money received on the
delivery of the goods is remitted to the corporation.

Loverin & Brown Co. v. Tansil.

Cases cited and approved: Austin v. State, 101 Tenn, 563; Kimmell v. State, 104 Tenn., 184; Croy v. Obion Co, 104 Tenn., 525; May v. New Orleans, 178 U. S., 496; Austin v. Tennessee, 179 U. S., 343; Cook v. Marshall Co., 196 U. S., 261.

Case cited and distinguished: Rearick v. Pennsylvania, 203 U. S., 507, 51 L. Ed., 295.

FROM WEAKLEY.

Appeal from the Chancery Court of Weakley County. —JOHN S. COOPER, Chancellor.

JAMES P. RHODES, for complainants.

HALL & BARR, for defendants.

MR. JUSTICE SHIELDS delivered the opinion of the Court.

Complainant, a commercial corporation created and organized under the laws of the State of Illinois, with its domicile, chief office, and place of business in the city of Chicago, and engaged in selling merchandise directly to consumers through its agents in this and other States, filed this bill in the chancery court of Weakley county against E. E. Tansil and others, officers of Weakley county and the town of Sharon, to enjoin the collection of privilege taxes imposed by those municipali-

ties upon all merchants conducting a retail business within their respective boundaries.

The contention of the complainant is that the business conducted by it in Sharon and Weakley county is interstate commerce and within the protection of the commerce clause of the constitution of the United States. If this contention is supported by the facts, the tax cannot be legally collected. If the business conducted is commerce within the State, complainant must pay the tax as other merchants doing business in Sharon and Weakley county.

Complainant's method of doing business in the several States other than that of its domicile is as follows:

A representative or salesman goes into a community and solicits orders from the inhabitants for merchandise, to be paid for on delivery at some place in the community if found as represented. The orders obtained are reduced to writing in duplicate, and contain a list of the articles desired by a customer and the prices to be paid for them; one copy being given to the customer, and the other retained by the salesman. These orders generally call for several different articles, and in many instances several customers order articles of the same kind and in the same quantities. When the canvass of the community is completed, the salesman classifies the merchandise called for in the several individual orders obtained, ascertains the number or quantity of each article, and sends to his employer one general order covering the aggregate number or quantity of articles

of each class.   In other words, this general order contains a requisition for the gross number or quantity of each article for which he has obtained orders; thus, if he has sold ten dozen packages of soda to two or more customers, the general order calls for the ten dozen packages as a whole, without regard to the number of customers by whom they are desired.   The names of the customers for whom the merchandise is intended, or the particular number or quantity of an article ordered by any one customer, is not communicated by the salesman to complainant, and is unknown to it.   The goods thus ordered from Chicago are there packed in large boxes and barrels to suit the convenience of complainant, and shipped by a common carrier to its order, to a point designated by the salesman, to whom the bill of lading is sent, so that he may obtain possession.   No separation of articles of like kind, or appropriation of them to particular persons, is made in Chicago.   The shipment is in bulk, and the selection of the articles or packages to be delivered to the several customers is left to the salesman.

When the boxes and barrels containing the aggregate order arrive at the place for delivery, the salesman receives and opens them at some convenient place, and separates and arranges the goods for delivery, by placing all articles of a kind together.

When a customer appears, the written order given by him is examined, and the articles therein called for are taken out of the several piles of merchandise and

delivered to him. When all the goods are delivered, the money received by the salesman is remitted to his employer at the home office in Chicago. No goods are to be ordered by the salesman unless he has procured individual orders for them, and all goods ordered and shipped, but not accepted, are returned or given away.

This was the manner in which complainant did business in Sharon and Weakley county. The orders obtained in Sharon were for family groceries, and aggregated about three hundred dollars.

We are of the opinion that this was commerce within the State, and not interstate commerce. The boxes and barrels in which this merchandise was packed by complainant and delivered to the carrier in Chicago, to be transported to Sharon, Tennessee, there to be delivered to its salesman, were original packages within the meaning of the commerce clause of the constitution of the United States, and when complainant's salesman broke them, and classified and assorted the contents, they became commingled with and a part of the common mass of the property of the State, and were subject to its police regulations and revenue laws. The several small packages of different articles contained in the boxes and barrels were not of such a character as are ordinarily and according to the usages of trade and commerce prepared and delivered by dealers to carriers for transportation. They were not put up or consigned for any particular customer to fulfill a contract or sale which the

118 Tenn—46

agent had made. Complainant did not then know who had ordered the several articles, nor to whom they would be delivered. The articles or packages were not marked with the names of any one, and those of the same kind could not be distinguished from each other. They were consigned and delivered at Sharon in bulk. When they were received by the salesman no segregation of any articles or packages from others of like kind, and no appropriation of any particular article or package to any particular customer, had been made.

No sale was consummated until the original packages in which the merchandise was shipped were broken, their contents classified, and segregation and appropriation made; the whole remaining the property of complainant until then. These facts clearly establish that complainant was engaged in the business of a retail merchant in Sharon and Weakley county, and in our opinion rendered it liable for the privilege taxes imposed upon merchants, which the defendants were attempting to collect by proper proceedings. We do not deem it necessary to indulge in an elaborate discussion of the adjudged cases upon the subject of interstate commerce, but will content ourselves with referring to a few, which we think fully sustain our conclusion in this one. They are *Austin* v. *State*, 101 Tenn., 563, 48 S. W., 305, 50 L. R. A., 478, 70 Am. St. Rep., 703; *Kimmell* v. *State*, 104 Tenn., 184, 56 S. W., 854; *Croy* v. *Obion County*, 104 Tenn., 525, 58 S. W., 235, 51 L. R. A., 254, 78 Am. Rep., 931; *Austin* v. *Tenn.*, 179 U. S., 343, 21

Loverin & Brown Co. v. Tansil.

Sup. Ct., 132, 45 L. Ed., 224; *Cook* v. *Marshall County,* 196, U. S., 261, 25 Sup. Ct., 233, 49 L. Ed., 471; and *May* v. *New Orleans,* 178 U. S., 496, 20 Sup. Ct., 976.

The material facts of the case last cited (*May* v. *New Orleans*) are substantially the same as those of this, and the conclusions of the court upon them are, we think, decisive of it.

The system of doing business adopted by the complainant is a thinly veiled scheme, under the guise of interstate commerce, to evade the revenue laws of the several States and obtain an unfair and unjust advantage over local dealers in competition in the sale of goods and merchandise. If such a scheme can be sustained, it will greatly demoralize all police regulations of the sale of merchandise and eventually destroy a large part of the revenues of the several States. We do not think the framers of the constitution intended or contemplated that the clause here invoked should have this effect, or be abused in the manner here attempted.

We do not think this case controlled by that of *Rearick* v. *Commonwealth of Pennsylvania* (lately decided by the supreme court of the United States), 203 U. S., 507, 27 Sup. Ct., 159, 51 L. Ed., 295, the opinion being delivered by Mr. Justice Holmes. The sales involved in that case were made by an Ohio corporation, with domicile in that State, to consumers in Pennsylvania, upon orders obtained by a traveling salesman, and a number of articles for different customers were shipped in one box or package to the agent in the latter State to be delivered; but in

every instance the particular articles or packages sold were so marked by number and the name of the purchaser for whom selected and set apart in Ohio that they could be identified and delivered to such purchaser when received in Pennsylvania. The goods sold were segregated from other like articles, appropriated to a particular purchaser, and the sale thus consummated at the warehouse of the dealer in Ohio. There was nothing left to be done but to deliver the articles to the purchaser when received at the point of destination, and each package was an original package. In the case at bar the goods are packed and shipped in bulk, in unidentified packages, not segregated from others of like kind, or appropriated to any particular purchaser, and remained the property of the seller until the original packages were broken, and the articles selected and delivered, and the sale consummated in Tennessee. The difference in the facts of the two cases is marked, material, and important.

The case of *Rearick* v. *Commonwealth of Pennsylvania*, we think, carries the protection of the commerce clause of the constitution to its utmost limit. We do not believe that it will be further extended, certainly not to cover a case of this kind.

We are therefore of the opinion that there is no error in the decree of the chancellor dismissing complainant's bill, and it is affirmed, with costs.