TOWN OF SELLERSBURG *v.* STANFORTH.

[No. 26,070. Filed November 26, 1935.]

*C. L. Fleshman* and *L. A. Douglas,* for appellant.

*Russell Kehoe,* for appellee.

TREANOR, C. J.—The Board of Trustees of appellant, the Town of Sellersburg, passed an ordinance entitled "An Ordinance to Define, License, Tax, Regulate and Restrain Hawkers and Peddlers within the corporate limits of the town of Sellersburg, Indiana" and which provided penalties for its violation. This appeal results from a judgment against appellant in a suit to recover a penalty of $25.00 from appellee, William Stanforth, for an alleged violation of the ordinance.

The Clark Circuit Court decided that the business appellee was engaged in was interstate commerce; that the ordinance of the town was invalid as applied to appellee because it constituted a regulation of interstate commerce.

Of the facts found by the trial court the following are material to our discussion:

> That the plaintiff Town of Sellersburg is a municipal corporation and is located in Clark County, Indiana.
>
> That on March 6, 1929, the Board of Trustees of said town duly passed and adopted ordinance No. 88 which reads, in part, as follows:
>
> "An ordinance to define, license, tax, regulate and restrain hawkers and peddlers within the corporate limits of the Town of Sellersburg, Indiana, and providing penalties for its violation.

"Be it ordained by the Board of Trustees of the Town of Sellersburg, Indiana: That it shall be unlawful for any person, firm or corporation to hawk or peddle meat, fruits, vegetables, melons, produce, dairy products, or any other goods, wares or merchandise anywhere within the city limits of the Town of Sellersburg, Indiana, without having first obtained as hereinafter provided a license so to do. For the purpose of this ordinance the words 'peddle' and 'hawk' are defined as meaning to sell, or to offer for sale, any personal property directly to a user or consumer, either by one going from house to house for the purpose of selling and delivering such property, or for the purpose of taking orders for the future delivery thereof, or by one selling and delivering such property from a vehicle, pack or other container in any street, alley, public square or other public place in said city. The Marshal of the Town of Sellersburg, Indiana, is hereby appointed a license inspector, and any licensee hereunder shall exhibit his license to said Marshal on request to do so. Any person violating any provisions of this ordinance shall forfeit and pay to the Town of Sellersburg the sum of fifty dollars, and in case of a license hereunder shall, in addition thereto, forfeit such a license. The license fee shall be as follows: Peddler or hawker, $25.00 for each vehicle used by the applicant in such business. For an employe, servant, agent or helper of a licensed peddler or hawker, or of a peddler or hawker exempt from obtaining a license, $15.00. That any person so vending or peddling on foot shall pay for such license or permit, as aforesaid, the following fees: $1.00 per day, $7.50 for three months, $15.00 for six months, $25.00 for one year."

That on the 16th day of June, 1930, and for the period of one year or more prior thereto, the defendant William Stanforth was the agent, and in the employ, of The Great American Tea Company, vendors of teas, coffees, spices and other like products, through agents, in this and other states; that on said day said, The Great American Tea Company was, and still is, a foreign corporation, having one of its stores and places of business in the City of Louisville, in the State of Kentucky.

That the duties assigned the defendant by said The Great American Tea Company under said employment consisted of soliciting orders for such

products as were handled by said company in its said business. That said orders, when so received by the defendant, were transmitted to said company at its said Louisville store, where the same were filled by said company by placing the merchandise called for in said orders into separate parcels and then delivered over to the defendant to be carried by him into the State of Indiana for delivery to the persons who had previously placed said orders as aforesaid. That upon such deliveries being made by the defendant payment would then be made to him therefor.

That the amounts received by the defendant from the persons to whom said deliveries were made were thereafter remitted by him to said company. That the defendant received for his services under such employment an agreed percentage of the amount of such sales. That if any article of merchandise was refused by any customer the same would be returned by the defendant to said company, in which instance the defendant would be credited to the extent of the price of such article.

That the defendant was required to give, and did give, a bond, payable to said company, in the sum of five hundred dollars, which was conditioned upon the honest application of the funds received by the defendant belonging to said company.

That on June 16, 1930, and on the occasion of defendant's arrest herein for the alleged violation of the ordinance herein set forth, said defendant was engaged in soliciting orders for merchandise for future delivery in behalf of said company, and in making deliveries of merchandise which had been previously ordered by certain inhabitants of said town, under the arrangements described in finding number five (5) hereof.

That said defendant made no sales, nor had he taken any orders for merchandise where the delivery was made concurrently with such sale, or the taking of such order.

That at no time prior to defendant's said arrest had he, or said The Great American Tea Company, applied for or had been granted a license provided for under the provisions of the ordinance herein referred to.

Appellant urges that the transactions of appellee did not include any act of interstate commerce; but that, on

the contrary, appellee was engaged wholly in ██ peddling his own merchandise in Indiana. The evidence strongly supports this contention. The goods for which appellee solicited orders, and which he later delivered, were furnished by The Great American Tea Company of Louisville, Kentucky. At approximately regular intervals appellee called upon prospective customers, at their homes, for the purpose of soliciting orders. Each customer's order was entered upon a separate slip which was retained by appellee. Orders were sent in to the office of The Great American Tea Company in bulk. No order was filled by the company as an order of a particular customer. If ten customers each purchased one pound of coffee, and ten each purchased two pounds, the appellee sent in his own order for thirty pounds to be put up in ten two-pound packages and ten one-pound packages. The company did not put up any merchandise for, or consign it to, any individual customer in conformity to the order of such customer. The appellee received, at the company's place of business in Kentucky, a mass of packages of merchandise; and no segregation for or appropriation of any particular package to any particular customer was made until the appellee delivered the merchandise to the individual customers.

The following testimony of the appellee discloses the course of dealing between the appellee and The Great American Tea Company:

A. I am the defendant and the same party that was out at Sellersburg taking orders and delivering tea and coffee; I was working for the company on commission.

Q. You bought these goods from the Great American Tea Company and then delivered them?

A. I would not say that. Yes; I guess so, too. I do not settle for them until a week later. It is the same thing.

Q. At the time you took these goods out, they were your goods then?

A. I would have to tell you how they were charged to me. When I leave there on Saturday I have orders I sent in and orders for a bill of goods I have taken orders on two weeks before. I go in Saturday and get that order. I am bonded $500.00 bond. I do not put no money down, of course; that bond takes care of it. These goods I send the order in, they give me those goods. If I have any returned they take them back. All I do not return I pay for in full. I live in Jeffersonville. I do not own the truck myself; I keep it at my home in Jeffersonville. I do not live in Louisville. When I order these goods they are charged to me.

Q. If ten people wanted ten pounds of coffee you would consolidate that order and make one order; is that right?

A. It would be one order, but ten separate packages. They would give it to me all in a bunch. I worked Jeffersonville, New Albany, and Sellersburg. Our manager is acquainted with some customers, by going over the route with me; they know the persons I want to deliver to; they might not know what I gave them. I am charged with the amount my orders call for; I pay the company all; if my business calls for $100.00 I give them a hundred; they give me my commission out of the hundred.

Q. In other words, if you are given over $100.00 worth of merchandise you are charged to the extent of the one hundred dollars and become responsible to that extent to the company?

A. Unless I take it back or take the one hundred dollars back in. Of course the goods go back. If the goods are not delivered, or refused, I return them. The Great American Tea Company furnishes the slips; each order we send in is on them itemized; my name is on the slip, also The Great American Tea Company. We have a house card we leave with the customer; The Great American Tea Company's name is on it. It owns the truck; the truck I drive and deliver the packages; I go and get the orders in the truck.

It is clear from the foregoing that The Great American Tea Company and appellee understood that the former was dealing only with the latter. No account

was kept at the company office between the company and any of appellee's customers in Indiana. The company looked to appellee as the one solely responsible for the purchase price of the goods. He understood that he was obligated to pay for all goods delivered to him unless he should return the goods; and his obligation was secured by a $500.00 bond. Inability or refusal of a purchaser to pay the appellee did not affect the latter's obligation to pay the company.

If the appellee became the owner of the goods in bulk when he received them from the company at its office it necessarily follows that he solicited purchasers of his own goods and was conducting a strictly intrastate business as a peddler. The fact that he took orders and then purchased the goods to fill the orders from a foreign vendor would not change the fact that his business was that of an itinerant retailer, whose method of doing business brought him within the purview of the ordinance and made him subject to the police regulations therein. A retail grocer in Jeffersonville would not be engaged in interstate commerce if he should take orders from his customers for particular amounts of green vegetables and then purchase vegetables in bulk lots from a wholesaler in Louisville to fill these orders. And this would be true even though the wholesaler should furnish a truck to the retailer with which to deliver the vegetables to the individual purchasers. A local automobile agency is not engaged in interstate commerce while soliciting orders for automobiles to be furnished to the customers by the agency, even though the automobiles are brought into the state, in interstate commerce, to fill the orders of the purchasers. Certainly even an occupational tax on such agencies, otherwise valid, could not be invalid on the ground of unlawful interference with interstate commerce simply because the local agency should "take orders" for automobiles

which must later be transported into the state for delivery to the purchasers. Obviously there is an interstate commercial transaction between the retail grocer and the wholesaler in Louisville as well as one between the local automobile agency and the foreign automobile manufacturer, but such transactions merely furnish the subject matter of an intrastate transaction which in business reality and legal theory is completely independent of the interstate transaction.

But if, as apparently found by the trial court, the defendant, throughout the entire transaction was acting as the agent of The Great American Tea Company then the company itself was engaging in intrastate business in Indiana through the medium of the peddling of the defendant. Apart from the source of the goods sold by the defendant it is clear that his method of doing business brings him within the terms of the ordinance because he was in fact a peddler carrying on a business as an itinerant retailer who utilized public highways and private homes of prospective customers for his place of business. The fact that the defendant's peddling activities were being utilized by a foreign corporation to carry on an itinerant retail business does not make the defendant any the less a peddler. We think it is clear, if appellee was acting as an agent of The Great American Tea Company that such company was doing a peddling business within the state of Indiana. This conclusion is in harmony with the reasoning and holding in the case of *International Harvester Co.* v. *Kentucky* (1914), 234 U. S. 579, 58 L. Ed. 1479, 34 Sup. Ct. Rep. 944. In that case the authority of the agents of the company was limited to taking orders which were required to be first submitted to and approved by the Harvester Company. The agents were likewise prohibited from making contracts, settlements, or to engage in other transactions not specifically authorized. The agents were per-

mitted to receive cash, checks, drafts, and notes, in course of payment of sums due upon orders previously approved and filled by the company. All deliveries were made f. o. b. at some point outside of Kentucky. The business conducted in the manner indicated in the state of Kentucky covered a considerable period of time. Orders and deliveries were numerous, and a regular systematic course of business was conducted. In sustaining the jurisdiction of the lower court, the Supreme Court said (p. 585) :

> "Upon this question the case is a close one, but upon the whole we agree with the conclusion reached by the Court of Appeals, that the Harvester Company was engaged in carrying on business in Kentucky. . . . In order to hold it responsible under the process of the state court it must appear that it was carrying on business within the State at the time of the attempted service. As we have said, we think it was. Here was a continuous course of business in the solicitation of orders which were sent to another State and in response to which the machines of the Harvester Company were delivered within the State of Kentucky. This was a course of business, not a single transaction. The agents not only solicited such orders in Kentucky, but might there receive payment in money, checks, or drafts. They might take notes of customers, which notes were made payable, and doubtless were collected, at any bank in Kentucky. This course of conduct of authorized agents within the State in our judgment constituted a doing of business there in such wise that the Harvester Company might be fairly said to have been there, doing business, and amenable to the process of the courts of the state."

The facts in the instant case are stronger than those in the case of *International Harvester Co.* v. *Kentucky, supra.* The appellant had for more than a year conducted a systematic course of business in the towns of Sellersburg, Jeffersonville, and New Albany, in the course of which he solicited orders and in person de-

livered goods for which he had orders. Also he collected from the customers all payments for such goods. We can say of the method of doing business in the present case that "here was a continuous course of business in the solicitation of orders which were sent to another state" and in the delivery of such orders; in a very true sense this was "a course of business, not a single transaction." In deciding a case presenting almost identical facts the Supreme Court of Tennessee made the following statement which is peculiarly applicable to the method of doing business in the present case:

> "The system of doing business adopted by the complainant is a thinly veiled scheme, under the guise of interstate commerce, to evade the revenue laws of the several States and obtain an unfair and unjust advantage over local dealers in competition in the sale of goods and merchandise. If such a scheme can be sustained, it will greatly demoralize all police regulations of the sale of merchandise and eventually destroy a large part of the revenues of the several States. We do not think the framers of the constitution intended or contemplated that the clause here invoked should have this effect, or be abused in the manner here attempted." *Loverin & B. Co.* v. *Tansil* (1907), 118 Tenn. 717, 723, 102 S. W. 77.

In our opinion the occupation of peddling, as carried on under the facts of this case, can be lawfully subjected to an occupational tax for the purpose of raising revenue. Also, because of its inherently objectionable features and because of its injurious effect upon the social and economic life of the community we believe that it may be discouraged under the broad police power of the state by restrictive regulations, or by the imposition of a license fee or tax, although the latter might be in excess of what could be lawfully imposed in connection with the enforcement of a measure which is strictly for the purpose of regulation or inspection.

But apart from the foregoing, we hold that the ordinance is valid as a police regulation and inspection measure. The ordinance fixes the amount of the license fee, or tax, defines "peddler" and establishes certain regulations. It expressly appoints the "Marshal of the Town of Sellersburg" license inspector. There is no suggestion that the $25.00 fee, or tax, is in excess of an amount reasonably necessary to cover the expense of enforcing the ordinance as an inspection and regulatory measure. Hawking and peddling are proper subjects of restrictive statutes and municipal ordinances. Formerly hawkers and peddlers carried a stock of goods from which sales were made at the time of soliciting the same. But the objections to peddling are no less real when the peddler solicits orders and later returns to deliver the goods for which he has taken orders. There is the same objectionable use of public highways and homes of prospective purchasers for a place of business; the same unbidden and frequently forced and disturbing intrusions into the private homes; and the same viciously unfair competition with local merchants whose business is a necessary element in the community life. Consequently the validity of the ordinance in question is not affected by including within its regulatory provisions the selling or offering for sale "any personal property directly to a user or consumer, either by one going from house to house for the purpose of selling and delivering such property, or for the purpose of taking orders for the future delivery thereof." Obviously regulation of peddling would be ineffectual if it did not cover the power to regulate selling to users or consumers by going from house to house for the purpose of taking orders for future delivery. *Graffty* v. *City of Rushville* (1886), 107 Ind. 502, 8 N. E. 609.

The license fee which is $25.00 a year is less than the

fee in many ordinances which have been held reasonable. It comes within the usually recognized limitations.

"The license fee should not exceed the necessary or probable expense of issuing the license and of inspecting and regulating the business which it covers; and such further reasonable sum as the city may deem necessary in order to secure the orderly pursuit of that business by excluding therefrom irresponsible and disorderly persons." (See Hawkers and Peddlers, 29 C. J. 232, §24, and footnotes.)

The ordinance does not discriminate between peddlers of goods produced in Indiana and foreign goods.

The board of trustees of Sellersburg did not exceed the power delegated to the town by the General Assembly of Indiana.

The decision of the Clark Circuit Court was contrary to law and it was error to overrule appellant's motion for a new trial.

Judgment reversed with instructions to sustain appellant's motion for new trial and for further proceedings not inconsistent with this opinion.