INDIANO, ET AL. *v.* CITY OF INDIANAPOLIS, ET AL.

[No. 967A72.  Filed May 13, 1971.]

638

*Rex P. Killian, William D. Ruckelshaus, Ruckelshaus, Bobbitt & O'Connor,* for appellants.

*John W. Tranberg, Richard L. Milan,* Assistant City Attorney, *Frank J. Otte,* Assistant City Attorney, of Indianapolis, for appellees.

STATON, J.—This is an appeal from the Marion County Circuit Court. The City of Indianapolis by and through its Board

of Sanitary Commissioners had filed a petition in the Circuit Court of Marion County pursuant to IC 1971, 19-2-16-12 (formerly Acts 1931, Ch. 117, Sec. 12; Burns § 48-4012). The Marion County Circuit Court found that "the assessments against the abutting property owners were equal to the amounts of special benefits to accrue to said property as a result of the proposed sewers." The appellant contends that the City of Indianapolis also benefited and that it is mandatory under the law that part of the costs of the improvements be assessed against the City of Indianapolis and Marion County.

Resident freeholders filed on January 5, 1966, with the Board of Sanitary Commissioners of the City of Indianapolis a petition that a sewer be constructed between East 77th Street, East 81st Street, North Graham Road and Allisonville Road under a public improvement resolution. The financing of the sewer was to be done through the "Barrett Law", and those who petitioned for the construction of the sewer were aware of this method of assessment. Pursuant to those petitions, the Board of Sanitary Commissioners of the City of Indianapolis, on August 15, 1966, issued a preliminary resolution, in which it was stated:

"RESOLVED BY THE BOARD OF SANITARY COMMISSIONERS OF THE CITY OF INDIANAPOLIS, STATE OF INDIANA, That it declares that it is necessary for the public welfare of such City that the construction of a local sanitary sewer designed to receive sewage from lands wholly outside such City and which local sanitary sewer will connect with and become a part of said City's sewage disposal system intended and adapted only for local use by the property holders whose property abuts thereon, and not intended or adapted for receiving sewage from collateral drains and same is hereby ordered in and along:

Local sanitary sewer between East 77th Street, East 81st Street, North Graham Road and Old Allisonville Road

and said sewer with all its appurtenances shall be constructed in accordance with the profile and specifications now on file

in the Office of the Department of Public Sanitation of said City. The cost of said improvement shall be apportioned against and paid by the property holder whose property abuts thereon, and upon the City of Indianapolis if the City is benefitted by said improvement, all according to the method and manner provided for in an Act of the General Assembly of the State of Indiana, entitled "An Act Concerning Municipal Corporations" approved March 6, 1905, and all acts amendatory thereof and supplemental thereto, including Chapter 177, of the Acts of 1931. Assessments, if deferred, are to be paid in ten equal annual installments, with interest at the rate of six per cent per annum. A bond or bonds shall be issued to the contractor in payment for such work, unless the property owners pay said assessments before said bond or bonds are issued. Under no circumstances shall the City of Indianapolis be held responsible for any sum or sums due from said property owner or owners for said work, or for the collection of same, or for the payment of any bond or bonds, certificate or certificates, issued to said contractor in payment for such work, except for such moneys as shall have been actually received by the City from the assessments for such improvement, or such moneys as said City is by said above entitled Act required to pay. All proceedings had, and work done in the making of said improvement assessment of property, collections of assessment and issuance of bonds therefor, shall be as provided for in said above entitled Act, Acts and amendments."

A hearing was held on the twelfth day of September, 1966, regarding the proposed sewer. Subsequent to the hearing on the same date, the Preliminary Resolution that the sewers be constructed was confirmed by the Board of Sanitary Commissioners. All of these proceedings were filed in the Circuit Court of Marion County, by way of a petition, on November 1, 1966. The petition was filed pursuant to IC 1971, 19-2-16-12 (formerly Acts 1931, ch. 117, Sec. 12; Burns' § 48-4012). The

Marion County Circuit Court, omitting the Caption, made the following findings of fact and conclusions of law:

"FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court makes the following findings of fact:

1. That the property of abutting property owners in the matter before the Court is benefitted in the amount determined by the Board of Sanitary Commissioners of the City of Indianapolis.

2. That the actions of the Board of Sanitary Commissioners of the City of Indianapolis at the first public hearing held September 12, 1966, on PIR #108—Local Sanitary Sewer between 77th Street, East 81st Street, North Graham Road, and Old Allisonville Road, determined that the assessments against property of abutting property owners were equal to the amounts of the special benefits to accrue to said property as a result of the proposed sewer.

3. That the Board of Sanitary Commissioners of the City of Indianapolis followed the procedure provided by statute in the determination of assessments against abutting property owners in the matter before the Court.

And upon said facts the Court states the following conclusions of law:

1. That the law is with the Board of Sanitary Commissioners of the City of Indianapolis.

2. That the assessments against property owners involved in the matter before the Court are proper.

3. That the Board of Sanitary Commissioners of the City of Indianapolis have followed the procedure provided in the applicable statutes governing such assessments."

The appellant has pointed out in his "Supplemental Brief" that, "the only real issue is whether or not the city of Indianapolis and/or county of Marion was benefited by the extension

of its sewer system." The appellant sets out two contentions, quoting further from the Appellants' Supplemental Brief:

"1. The Board necessarily concluded that the city was benefited when they declared that it was necessary for the public welfare of the city to construct the sewer designed to receive sewage from lands wholly outside the city and this finding is inherent in the statute."

Appellant further contends that it is mandatory under the statute for the Board of Public Works to consider and determine what part of the cost shall be paid by the City of Indianapolis.

"2. The city's own evidence established the fact that the city of Indianapolis would benefit from the extension of the city's sewer system (Appellants' Brief, page 14; Transcript pages 80 and 81). Even the City Attorney admitted in his opening remarks to the trial court that the benefit to the city would be general health and welfare. Page 52 of Transcript."

We cannot agree with either of appellants' contentions. The appellants assume that the word "benefit" in the statute has a broad, general and common meaning. This is an erroneous assumption when interpreting a statute. "Benefit" must be defined and its meaning confined to the intent and purpose of the statute. This can only be done by a very careful reading of the statute. It is immediately apparent that the statute does not speak of a general, remote or incidental "benefit" but a "benefit" which imports a more restrictive meaning. For example, in *Township of Milburn, Essex County* v. *Smith* (1931), 9 N. J. Misc. 307, 484; 153 A. 637, 638, the court held that the word "benefit" meant that which will justify an assesment for storm-water drainage system must present an "appreciable benefit." See Words and Phrases, *Benefit,* page 484. In interpreting the Civil Code in *Watkins Medical Co.* v. *Marbach* (1917), 20 Ga. App. 691, 93 S. E. 270; *Tennille Banking Co.* v. *Ward* (1923), 29 Ga. App. 660, 116 S. E. 347; the court held that there should be some real and substantial, and not merely nominal benefit. Any benefit regarding

the statute under examination here would be in relation to real property. It would follow that the benefit that we are discussing is really related to enhancing the value of real property. In other words, a special benefit to a particular parcel of real estate which is unlike any other parcel of real estate. One parcel of real property may receive more of a special benefit than another. For example, a sewer improvement would "benefit" a parcel of real property recently zoned for an apartment building in contemplation of the sewer improvement more than a single family dwelling on an adjoining parcel of real property. A shopping center which already has sewer service in the next block would undoubtedly "benefit" from a sewer improvement to adjoining unimproved parcels of real property which may be used for apartment development; but this "economic benefit" is obviously not the "benefit" that the statute is using as a measure to determine a fair and equitable assessment. In *Hubenthal* v. *Crain* (1959), 239 Ind. 646, 159 N. E. 2d 850, our Supreme Court stated:

> "In determining whether lands are benefited, special benefits only may be considered, and not the general benefits which accrue to the landowner as a member of the community. Benefits are special when they increase the value of the property, relieve it from a burden, or make it especially adapted to a purpose which enchances its value.
>
> . . . it is not necessary that the benefits be direct and immediate to justify an assessment. Future possibilities, if any, as well as collateral or indirect benefits, may be considered." See 10 I.L.E., *Ditches and Drains,* pp. 503, 504.

The appellants' land is being relieved of the burden of having to install either a new septic system or having to abandon the improved parcel of real estate as a residential property because it lacks adequate sewage facilities.

An examination of the statute, IC 1971, 19-2-16-12 (formerly Acts 1931, ch. 117, Sec. 12; Burns' § 48-4012), reveals the procedure for payment of the improvement where the assessment falls below the cost of the improvement. If ". . . such

improvement is necessary for the public welfare of such city and that the benefits assessed shall fall below the amount required to pay . . . for such improvement . . ." then the city shall pay the difference out of the general fund, issue bonds or issue certificates of indebtedness. In the case at bar, the Marion County Circuit Court found as its findings of fact No. 2 that the "assessments against property of abutting property owners were equal to the amounts of the special benefits to accrue to said property as a result of the proposed sewer."

It is only when the public welfare of the city requires an improvement and the special benefit to the lands affected outside the city does not *equal* the assessment that the city and county may be required to pay the difference.

The second part of appellants' first contention is that the Board "(b) shall consider and determine what part, if any, of the cost shall be paid by such city." Appellants refer to that part of the statutory procedure which deals with the preliminary adoption of the resolution, and which reads as follows:

". . . At the time of adopting such preliminary resolution for such improvement or work the board of public works may take into consideration whether the said work or improvement, when completed, will beneficially or injuriously affect any lands or property outside of the corporate limits of said city, *and shall consider and determine what part, if any,* of the cost shall be paid by such city. In case the board shall find and declare in any such resolution that the proposed work, when completed, will injuriously or beneficially affect lands or property without the corporate limits of such city, then and in that case only, the said board shall include in any such resolution separate estimates of the aggregate cost respectively as proposed to be assessed against such city and/or county and to be divided and assessed against the lands within and outside of such city, and in the sub-districts and zones, in the manner hereinbefore in this act provided for sewers affecting lands wholly within the city, and shall also serve a written notice of such proceedings upon the county commissioners of such county; . . ." (Italics ours).

This provides that "the Board of Public Works may take into consideration" the question of benefit or injury to "any lands" outside the corporate limits of the city. It is the next clause which appellants choose to interpret as mandatory: ". . . and shall consider and determine what part, if any, of the cost shall be paid by such city. . . ." Appellants argue that an expressed determination must be made by the Board even if it is negative in its nature. If no determination is made and the improvement is ordered, appellants would reason that a benefit must be implied and therefore a determination of separate costs to the city must follow. We do not agree.

Admittedly, the statute does not speak with the clarity here that exists in some of its other parts. Again the entire statute has to be examined as a whole in order to understand any of its parts. It does apear that the word "may" instead of the word"shall" would have been a better choice. In *State ex rel. City of Indpls.* v. *Brennan* (1952), 231 Ind. 492, p. 498, 109 N. E. 2d 409, the court held: "The word 'shall' when used in a statute is generally construed mandatory rather than directory, and this rule will control unless it appears clearly from the context or from the manifest purpose of the act as a whole that the legislature intended in the particular instance that a different construction should be given to the word." Court citing *State ex rel. Simpson* v. *Meeker* (1914), 182 Ind Ind. 240, 243, 105 N. E. 906, 907; *Wysong* v. *Automobile Underwriters, Inc.* (1933), 204 Ind. 493, 504, 184 N. E. 783; *State ex rel. De-Armond* v. *Superior Court of Madison County* (1940), 216 Ind. 641, 643, 25 N. E. 2d 642; *City of Gary* v. *Yaksich* (1950), 120 Ind. App. 121, 126, 90 N. E. 2d 509; 59 C.J., *Statutes*, §§ 635, 636; *Bemis* v. *Guirl Drainage Co.* (1914), 182 Ind. 36, 52, 105 N. E. 496. Using the word "may", we take the clause to mean that if benefit and injury to land outside the corporate limits of the city is considered and determined by the Board of Public Works, said Board may further determine what part of the cost shall be paid by the city. Under the statute being considered, it may be for the public welfare and benefit of the

city to "construct, enlarge, or extend any local or district sewer or drain," or, on the other hand it might be "for the public welfare of said city" to permit sewage to "intercept" in some manner the sewage from lands "wholly outside said city." In the case at bar, the city adopted a preliminary resolution which indicated that it would be in the public welfare of the city to have sewage introduced into its sewage system from outside the corporate limits. The Board of Public Works did not find and declare that the city would be benefited nor was any separate estimate made of the aggregate costs. The Marion County Circuit Court found that "the assessments against property of abutting property owners were equal to the amounts of the special benefits to said property as a result of the proposed sewer."

The appellants' interpretation of the statute would require the taxpayers of the city and county to pay for the improvement even though this benefit was remote, incidental and even nominal in nature. This can only happen under the statute when "the benefits assessed shall fall below the amount required to pay the damage awarded and to pay for such improvement." In the case at bar, they were found to be equal. We, therefore, find the appellants' argument untenable.

The appellants' second proposition: "2. The city's own evidence established the fact that the city of Indianapolis would benefit from the extension of the city's sewer system. (Appellants' Brief, page 14, Transcript pages 80 and 81). Even the City Attorney admitted in his opening remarks to the trial court that the benefit to the city would be general health and welfare. (Transcript page 52)." The evidence referred to begins at page 79 of the transcript and continues on through page 82: Mr. Bentley on cross-examination by the appellants' attorney was asked the following questions and gave the following answers:

"Q. Mr. Bentley, how does a sewer in Ivy Hills benefit the City of Indianapolis?

"A.  In that it cleans up the streams. The sanitary sewage would be removed from streams which pass through the City of Indianapolis down stream. That is one method.

* * *

"Q.  Did you say there is sewage going from Ivy Hills now in streams through the City of Indianapolis?

"A.  Yes, sir.

* * *

"Q.  That means sewage runs behind these Lots 12, 13, 14 and 15? Is that right?

"A.  Yes, it is.

"Q.  How often does that occur?

"A.  I do not know. I haven't run any time check. Each time I have been there I have seen this.

"Q.  So that would be the benefit to the City, is that right?

"A.  That would be one of the benefits.

"Q.  What would be the other benefits?

"A.  I don't know any other particular benefits at this time.

* * *

"Q.  Did you make any effort to allocate cost to the City of Indianapolis for the benefit to the City of keeping the sewage out of the stream that runs south of Graham Road?

"A.  There is allocations, yes.

"Q.  Are they included in the cost estimate, Exhibit No. 4, I think it is now?

"A.  I don't believe it shows as an allocation. This is only a cost estimate and no attempt to allocate cost there in this estimate."

The admissions of the city's attorney referred to in appellants' second proposition is as follows:

"*THE COURT:* Mr. Tranberg, what is your answer?

"*MR. TRANBERG:* This is a procedure which can be done. In this particular proceeding the Resolution states it is to be paid by the property owner whose property abuts the sewer.

"*THE COURT:* What about the public welfare for the city?

*"MR. TRANBERG:* The benefit would be health, general health and welfare.

\* \* \*

*"THE COURT:* You say it would benefit. The City has already put out several millions for sewers, do you want the City to pay for taking other people in, is that right?

*"MR. RUCKELSHAUS:* I don't know if the City should pay or not. I know if you live in the City, you have to pay."

The appellants have again confused the technical meaning of benefit as it is used in the statute. They have given the word "benefit" its broadest and most common meaning which most laymen would attribute to it. As pointed out earlier, this is a term which must necessarily have a very technical and limited meaning within the scope of the intent and purpose of the statute. The petitions of the several property owners affected by the improvement have septic systems which are subject to break down. Several parcels of real property are greatly enhanced in value by the installation of sewers and are specially benefited by such an improvement. The "benefit" that Mr. Bentley speaks of in his testimony is the broad and common definition or meaning of "benefit" which is not applicable to the statute. The "benefit" referred to by the city attorney is not the same "benefit" which the statute refers but a "benefit" used in its broadest and most common frame of reference. It should be noted that the city attorney used the terms "general health and welfare." It does not need to be pointed out in great detail that other property owners in the county adjacent to or in close proximity to the improved real property would receive a similar general and common benefit. The special benefit attaches to the property being improved.

The judgment should be and the same hereby is affirmed with costs against the appellants.

Hoffman, C.J., Sharp and White, JJ., concur.

NOTE.—Reported in 269 N. E. 2d 552.