CITY OF PORTAGE and Portage Port Authority of Portage, Indiana, Appellants–Defendants,

v.

James R. HARRINGTON, Suzanne M. Harrington, South Shore Marina, Inc., James A. Boyd, Sr., Carrol A. Gonzalez, Kenneth Graske, Doyne's Marina Corp., Charles L. Jenkins, DuVall's Boat Works, Duane DuVall, Izaak Walton League of America, Miller Chapter, and Burns Waterway Better Boating Association, Inc., Appellees–Plaintiffs.

No. 64A03–9109–CV–285.

Court of Appeals of Indiana, Third District.

Sept. 10, 1992.

---

William S. Suarez, Portage, for appellants-defendants.

Kathryn D. Schmidt, Fred M. Cuppy, Burke, Murphy, Costanza & Cuppy, Merrillville, for appellees-plaintiffs.

GARRARD, Judge.

This is an appeal from a judgment in favor of James R. Harrington, et al. We affirm.

## FACTS AND PROCEDURAL HISTORY:

Within the city limits of the City of Portage, Indiana ("City") flow the east and west arms of the Little Calumet River and Burn's Ditch. These navigable waterways,

commonly known as Burn's Waterway, empty into Lake Michigan and are a haven for marinas and water pleasure craft.

In 1975 the Common Council of the City created the Port Authority of Portage, Indiana ("Port Authority") by Ordinance No. 75–15, pursuant to IC 8–10–5–1 et seq., with full power to control, regulate, straighten, deepen, and improve Burn's Waterway. On April 3, 1979, the common Council of the City adopted Ordinance No. 79–16 granting to Port Authority the ability to regulate and license any recreational or business use of any water course within the City along with the authority to impose licensing fees for the use of the Waterway.

Prior to 1990, the Port Authority funded its regulatory activities by collecting from each boat which was permanently docked along the waterway a license fee of $1.00 per registered foot of boat length. The funds were to be used for administrative and implementation expenses, safety devices and controls to regulate the usage of the Waterway, and maintenance and improvements to the Waterway. During the years that the $1.00 per foot fee was in effect, the Port Authority did not run short of funds to pay any of its administrative and regulatory costs.

Sometime prior to 1988, complaints from boaters and the observations of Port Authority members revealed the need to dredge the Waterway in order to remedy many shallow spots, sandbars, and a generally low water level. In 1988 the Port Authority set out to study the feasibility of such a project and to acquire the necessary permits. In January of 1990 the Indiana Department of Natural Resources ("DNR") granted a conditional permit that required the Port Authority to do preliminary studies ("Phase I") before dredging ("Phase II") could commence.

Faced with the additional costs associated with Phase I of the dredging project, the Port Authority recommended to the Common Council that the City require a marina annual license fee of $75.00 per dock slip and in April of 1990 the Common Council

enacted Ordinance No. 90–19 requiring this fee. This fee replaced the $1.00 per foot fee for boats permanently docked along the Waterway and the extra revenue was earmarked for costs associated with Phase I of the dredging project.

The marina owners and other boaters ("Boaters") filed suit on May 1, 1990 asking for declaratory and injunctive relief alleging (1) that the $75.00 fee was contrary to IC 36–1–3–8(4) and (5), (2) that the Port Authority did not prepare an annual budget as required by IC 8–10–5–16, and (3) that the Port Authority did not avail itself of IC 8–10–5–17 which provides for the establishment of a cumulative maintenance fund for the dredging and cleaning of waterways. The plaintiffs requested special findings and, on June 12, 1991, the trial court entered judgment in favor of the Boaters declaring Ordinance 90–19 unconstitutional and void.

The City of Portage appeals and we affirm.

ISSUES:

The City presents several issues for appeal which we restate as follows:

I. Whether the City of Portage has authority to authorize a license fee for the use of Burn's Waterway.

II. Whether the fee imposed upon the users of Burn's Waterway by the Port Authority was reasonably related to the administrative costs of exercising its regulatory power over the Waterway.

III. Whether the trial court erred in making special findings of fact nos. 7, 9, 10, 11.

DISCUSSION:

Issue I:

█ First, the City of Portage contends that it has the authority to authorize a license fee for the use of Burn's Waterway. We agree.

IC 36–1–3–4(b) states that a unit[1] has (1) all powers granted it by statute; and (2) all

---

**1.** IC 36–1–2–23 defines "unit" as meaning any county, municipality, or township. Chapter 3, the Home Rule provisions of the statute, applies to all units except townships. IC 36–1–3–1.

other powers necessary or desirable in the conduct of its affairs, even though not granted by statute. Any doubt as to the existence of a power of a unit shall be resolved in favor of its existence. IC 36–1–3–3. The policy of the state is to grant units all the powers that they need for the effective operation of government as to local affairs. IC 36–1–3–2. A unit may not, however, exercise any power that is expressly denied by the Indiana Constitution, by statute, or is expressly granted to another entity. IC 36–1–3–5.

■ IC 36–1–3–8 enumerates specific powers withheld from a unit. Subsection (5) withholds the power to impose a license or other fee greater than that reasonably related to the administrative cost of exercising a regulatory power. A charge in excess of that reasonably related under this subsection is considered to be a revenue tax and will be prohibited. *No. Ind. Coin Operators Ass'n v. South Bend* (1985), Ind.App., 478 N.E.2d 704, 706; *See also* IC 36–1–3–8(4). A reasonably related fee, however, is valid as a licensing fee unless otherwise prohibited. *See No. Ind. Coin Operators, supra,* at 706.

In this case there is no statute or constitutional provision that would prohibit the City of Portage from requiring a license fee from boaters using Burn's Waterway. A fee, therefore, that is reasonably related to the City's administrative costs in exercising its regulatory power over Burn's Waterway is valid.

Issue II:

■ The City of Portage next contends that the trial court erred in holding that the $75.00 per slip fee was not reasonably related to the Port Authority's administrative costs in exercising its regulatory power over Burn's Waterway. Specifically, the trial court found that the monies collected through the enforcement of the ordinance would not be limited to the probable expense of issuing licenses and inspecting and regulating boating activity on Burn's Waterway. The court found that the ordinance was unrelated to the costs of regulation and was therefore an impermissible

revenue tax. We affirm the decision of the trial court.

■ As we noted earlier, IC 36–1–3–8(5) provides that a governmental unit does not have "[t]he power to impose a license fee greater than that reasonably related to the administrative cost of exercising a regulatory power." A license fee, authorized solely to carry out a regulatory purpose, must be limited to the probable expense of issuing the license, inspecting and regulating the activity. *No. Ind. Coin Operators v. South Bend* (1985), Ind.App., 478 N.E.2d 704, 706; *Common Council of the City of Crown Point, et al. v. High Meadows, Inc.* (1977), 173 Ind.App. 138, 362 N.E.2d 1166, 1167. A license fee which is not related to regulatory costs constitutes an impermissible revenue measure. *No. Ind. Coin, supra,* at 706; *Stith Petroleum Co. v. Dept. of Audit and Control of Indiana, et al.* (1937), 211 Ind. 400, 5 N.E.2d 517, 520.

■ In general, the cases that have dealt with the question of what is "reasonably related" under IC 36–1–3–8(5) have approached the question from the standpoint of the *amount* charged. When reviewing the amount charged as a license fee a court will defer to the legislative branch. The court will not generally compute the difference between administrative costs and the amounts collected. *No. Ind. Coin, supra,* at 706; *Stith Petroleum, supra,* 5 N.E.2d at 520. A license fee will not be declared a revenue tax unless it is clearly shown to be obviously and largely beyond what is needed for the regulatory services rendered. *No. Ind. Coin, supra,* at 706; *Stith Petroleum, supra,* 5 N.E.2d at 520.

■ In addition to the *amount* in question, the *purpose* for which the money is raised can also be used when considering whether a fee is reasonably related to a regulatory purpose. For example, in *High Meadows, supra,* the city sought to increase the fees charged for a permit to connect to the city's sanitary sewer system. The evidence disclosed that the increased connection charge was a means for providing revenue toward expanding the capital assets of the sewage treatment facility.

*High Meadows, supra,* 362 N.E.2d at 1168. The trial court in that case found that the fees "are substantially in excess of and bear no relation to the actual cost incurred ... in issuing permits and inspecting completed sewer connections on existing mains." *Id.* 362 N.E.2d at 1167. This court affirmed.

In the case at bar, it is the *purpose* rather than the amount which leads us to conclude that the extra money raised by Ordinance 90–19 is unrelated to the Port Authority's regulatory activities over Burn's Waterway. The trial court found that the purpose of Ordinance 90–19 was to "raise sufficient monies to pay for the costs relating to the dredging of Burn's Waterway." The City of Portage affirmed this finding and stated in its appellate brief that "[f]aced with the additional costs of Phase I, being the preliminary studies and conditions required by the DNR to obtain the maintenance dredging permit, the Port Authority recommended that the Common Council of the City require a marina annual license fee of $75.00 per dock slip." [2]

By its own admission, the City has conceded that the purpose of Ordinance 90–19 was to finance a project unrelated to the Port Authority's day to day administrative costs incurred in the exercise of its regulatory power over Burn's Waterway. The trial court found that the day to day administrative costs had been adequately met by the previous $1.00 per registered foot charge. The extra funds were to go to a distinct and separate project. We conclude, therefore, that the $75.00 per dock slip fee charged by the Port Authority in this case was not limited to the reasonable costs of issuing licenses, or patrolling or regulating boaters on the Waterway. The extra charges levied under Ordinance 90–19 were specifically earmarked for a dredg-ing project unrelated to these activities. The charges levied under the ordinance, therefore, exceed the statutory authorization and are contrary to law. [3]

Issue III:

Finally, the City of Portage challenges the trial court's findings of fact nos. 7, 9, 10, and 11 as clearly erroneous. We disagree.

 In this case the trial court entered special findings of fact and conclusions of law pursuant to a motion by the Boaters. When the trial court has entered special findings, this court applies a two-tier standard of review. *W & W Equipment Co., Inc. v. Mink* (1991), Ind.App., 568 N.E.2d 564, 569. We first determine whether the evidence supports the findings, and then determine whether the findings support the judgment. *Id.* Special findings and the judgment flowing from the findings will be set aside only if they are clearly erroneous. *Id.;* Ind. Trial Rule 52(A). In determining whether the findings and judgment are clearly erroneous, this court will neither reweigh the evidence nor judge the credibility of the witnesses. *W & W Equipment Co., supra,* at 570. We consider only the evidence in the record which supports the judgment along with the reasonable inferences to be drawn from the evidence. *Id.* We will disturb the trial court's findings only if the record is devoid of facts or inferences to support the findings. *Id.*

The City of Portage attacks 4 of the 11 special findings entered by the trial court. We have reviewed the relevant portions of the record and conclude that the findings entered by the trial court are not clearly erroneous. We find sufficient evidence to support each of the findings. No error was committed.

**2.** The City of Portage urges that the additional fees raised by Ordinance 90–19 would be used only to finance Phase I of the dredging project and not the actual dredging. (Appellant's Brief at 23). This distinction, however, is irrelevant for the purposes of determining whether *any* of the expenses of the dredging project are reasonably related to the administrative costs of regulating boating on the waterway.

**3.** We note that in this instance it is the *extra* funds *expressly* designated for the dredging project that are fatal to this ordinance. If the purpose of the fees were limited to administrative costs, the $75.00 fee would likely remain valid unless it can be shown to be obviously and largely beyond what is needed to exercise the regulatory purpose. *No. Ind. Coin, supra,* at 706.

CONCLUSION:

For the foregoing reasons, the decision of the trial court is affirmed.

SHARPNACK and STATON, JJ., concur.