**SUBURBAN HOMES CORP.,**
**Plaintiff–Appellant,**

v.

**CITY OF HOBART, Indiana, Calvin Green, Mayor; Donald Forrest, Building Inspector; Gerald Kegebein, Electrical Inspector; and Daniel Nawrocki, Plumbing Inspector, Defendants–Appellees.**

No. 3–1178A296.

Court of Appeals of Indiana,
Third District.

Oct. 16, 1980.

Donald E. Cochran, Westville, for plaintiff–appellant.

James E. Hughes, Eric R. Johnson, Sommer & Barnard, Indianapolis, Charles A. Stoner, Merrillville, for defendants–appellees.

Terrence P. Pehler, Indianapolis, for amicus curiae Homebuilders Assoc. of Indiana.

GARRARD, Presiding Judge.

Suburban Homes Corp. (Suburban) brought this action for declaratory judgment against the City of Hobart to secure a determination of the validity of certain city ordinances, especially the city's ordinance establishing requirements for electrical contractors in the construction of one or two family private residences.

The complaint alleged that Suburban manufactured modular homes; that it complied with the requirements of the state building code for one or two family residences and for industrialized building systems;[1] and that it was prevented from selling its homes to customers in Hobart because the homes did not meet the more stringent requirements of Hobart's ordinance.

The city admitted all the allegations of Suburban's complaint and both parties moved for judgment on the pleadings. The trial court determined that the city ordinances remained valid and Suburban appeals.

The question thus presented is the proper construction and impact of IC 22–11–1–1 et seq. as amended.

The statute, enacted as Acts 1969, Ch. 338, originally excluded from its purview one or two family private residences. It established the "administrative building council of Indiana" and empowered the council to adopt standards, rules and regulations for the construction, repair and maintenance of "places of employment, public buildings, tenement houses and all other buildings to which the public normally has reason of access." (hereinafter referred to as public buildings). The council, through the state building commissioner, was also charged with the enforcement thereof. IC 22–11–1–3, 9 and 10.

IC 22–11–1–2 declared the purpose of the act,

"... to provide the adequate administrative organization for state building regulation ... to formulate and execute state building regulations and to eliminate duplication, conflict, and overlapping of responsibility in the protection of life, public safety and real and personal property in the design and construction of buildings and structures."[2]

---

1. IC 22 11-1-1.5 defines an industrialized building system as any structure or component thereof which is wholly or in substantial part fabricated in an off–site manufacturing facility for installation or assembly on a permanent foundation at the building site.

2. Subsequent amendments added energy conservation and providing accessibility to the physically handicapped to the purpose. 1977, P.L. 265; 1978, P.L. 124.

Section 11 provided that when adopted and promulgated pursuant to law the standards, rules and regulations adopted by the council "shall supersede any standard, rule, regulation or classification of any other board, department, division, commissioner or officer in conflict therewith." IC 22–11–1–11. However, Section 19 added that administration of the rules and regulations should be enforced in cooperation with local officials and

> "With the rules and regulations issued by the administrative building council as a basis, city ordinances may go more into detail if desired, or may contain more stringent requirements, Provided the same do not conflict with any rule or order of the administrative building council, except as hereinafter provided."

Finally, Section 32 provided that the council should formulate a standard statewide building code by January 1, 1971, to become effective March 15, 1971. The section then provided,

> "Thereafter, all building rules and regulations of political subdivisions of the state shall be approved by the administrative building council before enactment."

It is well established in our law that where the legislature properly enacts a general law which occupies the area, then a municipality may not by local ordinance impose restrictions which conflict with rights granted or reserved by the General Assembly. *See, e. g., Medias v. City of Indianapolis* (1939), 216 Ind. 155, 23 N.E.2d 590; *Bd. of Public Safety v. State ex rel. Benkovich* (1979), Ind.App., 388 N.E.2d 582. However, it has been observed that where the legislature does not intend to occupy the area, a local ordinance may be sustained where it merely supplements the burdens imposed by the statute with additional requirements that are logically consistent with the statutory purpose. *City of Indianapolis v. Sablica* (1976), 264 Ind. 271, 342 N.E.2d 853; *Benkovich, supra.*

■ In the case of IC 22–11–1–1 et seq. the provisions heretofore discussed manifest a clear intention by the legislature to adopt a statewide building code for uniform operation throughout the State of Indiana. Both the formal statement of legislative purpose in Section 2 and the express declaration of Section 11 provided that upon adoption and promulgation the state standards, rules and regulations were to supersede those of any other board. The legislature did declare that other boards or agencies could continue to regulate,[3] but the provisions applicable to cities and towns mandated that any such ordinances utilize "the rules and regulations issued by the administrative building council as a basis" for their content (IC 22–11–1–19) and that they be "approved by the administrative building council before enactment." (IC 22–11–1–32). Clearly then, upon proper adoption and promulgation the state building code superseded all existing local ordinances in the same area applicable to the construction of public buildings.

The question now presented by the parties is what was the effect when the 1971 legislature amended the act. These amendments (1) authorized the council to adopt and promulgate standards, rules and regulations for one and two family residences, IC 22–11–1–10(b), and for industrialized building systems, IC 22–11–1–10(c). They also provided for in-plant inspection and issuance of an insignia of acceptance for industrialized building systems with the direction that "All industrialized building systems bearing such insignia of acceptance shall be conclusively deemed to comply with the requirements of all ordinances and regulations of any local government which are applicable to such housing." IC 22–11–1–9.

■ The cardinal rule for construing statutory amendments is that they are to be considered as part of the original act, and the act as amended is to be given construction as if the amendment were part of the

---

**3.** In addition to the provisions applicable to cities and towns, the act also contained the power of other state agencies to regulate in the field, but such regulation is expressly subjected to council approval. IC 22- 11 1–15.

original. *State v. Bd. of Commr's.* (1906), 166 Ind. 162, 76 N.E. 986; *State v. Davies* (1978), Ind.App., 379 N.E.2d 501. Thereafter, and as to all acts subsequently done the act should be construed as if the amendment had always been part thereof. *Stiers v. Mundy* (1910), 174 Ind. 651, 92 N.E. 374; *State v. Bock* (1906), 167 Ind. 559, 79 N.E. 493.

 It follows that when, pursuant to the amendments, the council adopted and promulgated standards, rules and regulations for industrialized building systems, 660 IAC 2–1–1 et seq., and for one and two family dwellings, 660 IAC 3–1–1 et seq., the effect under Section 11 of the act was to supersede the municipal ordinances theretofore in effect covering these subjects. From that point on local regulation, while permissible, required that the municipality use the state regulations as a basis for its consideration and additionally required submission to and approval by the council before enactment into law.

Accordingly, the 1951 ordinances of the city were superseded and the court erred in concluding they constituted a valid restriction upon Suburban.

Reversed and remanded for further proceedings consistent herewith.

STATON and HOFFMAN, JJ., concur.