### CITY OF GARY, Indiana, Appellant–Defendant,

v.

### INDIANA BELL TELEPHONE COMPANY, INCORPORATED, d/b/a Ameritech Indiana, Appellee–Plaintiff.

No. 45A03–9808–CV–333.

Court of Appeals of Indiana.

June 23, 1999.

80

Gilbert King, Jr., Gary, Indiana, William Malone, Miller & Van Eaton, Washington, D.C., Attorneys for Appellant.

Michael R. Fruehwald, Daniel W. McGill, Nicholas K. Kile, Barnes & Thornburg, Indianapolis, Indiana, A. David Stippler, Ameritech Indiana, Indianapolis, Indiana, James L. Wieser, Randy H. Wyllie, Wieser & Sterba, Schererville, Indiana, Attorneys for Appellee.

## OPINION

STATON, Judge

The City of Gary ("the City") appeals the trial court's grant of summary judgment in favor of Indiana Bell Telephone Company, Inc. d/b/a Ameritech Indiana ("Ameritech Indiana") and the denial of its cross-motion for summary judgment. The City raises one issue on appeal, which we restate as: whether the trial court erred in granting summary judgment for Ameritech Indiana and denying summary judgment in favor of the City.

We affirm in part and reverse in part.

The facts most favorable to the City reveal that the City enacted Ordinance Numbers 6970 and 6971 in January, 1998. Ordinance No. 6970 establishes the Gary Access, Information, and Telecommunications Trust ("GAITT"). Ordinance No. 6970 also adopts a telecommunications policy for the City, which has as one of its goals the development of "a revenue generating concept and model" (§ 3.9) that will aid "the economic revitalization of the City by bringing its residents into the information age through extension of Internet access and other computer based services to all economic strata in the community." City's Brief at 5–6. The GAITT is charged with several responsibilities under Ordinance No. 6970, including the development, implementation, and collection of fees designed to obtain fair and reasonable compensation for the commercial use of public rights-of-way.

Ordinance No. 6971 is a companion ordinance that provides funding for the initiatives set forth in Ordinance No. 6970 by imposing a "requirements-based fee" on all telecommunications providers using the City's rights-of-way. This fee is described as compensation to the City for access to the market for telecommunications within the City and for use of public rights-of-way. The total "requirements-based fee" for 1998 is twenty million dollars. In future years, the total "requirements-based fee" will be calculated in one of three ways: (1) based upon an assessment of the City's "requirements," (2) based upon a percentage not to exceed 15% of the providers' gross revenues, or (3) based upon a "growth factor" calculated from the providers' telecommunications revenues multiplied by the previous year's "requirements-based fee."

Each year, the total "requirements-based fee" is allocated among the various telecommunications providers based upon the kind of carrier and the kinds of services that the carrier has the technical capability to provide. The ordinance contemplates that some or all of the various providers' portions of the "requirements-based fee" may be discharged by providers furnishing in-kind telecommunications services. For 1998, Ameritech Indiana's share of the $20 million "requirements-based fee" was $3.2 million.

Ameritech Indiana filed a declaratory judgment action, asking that the ordinances be declared void as exceeding the scope of the City's municipal powers. After hearing oral argument on cross-motions for summary judgment, the trial court granted summary

judgment in favor of Ameritech Indiana. The City appeals.

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The burden is on the moving party to prove there are no genuine issues of material fact and he is entitled to judgment as a matter of law. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992). At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. T.R. 56(C).

■ In this case, the trial court entered specific findings of fact and conclusions of law. Specific findings and conclusions are neither required nor prohibited in the summary judgment context. *Althaus v. Evansville Courier Co.*, 615 N.E.2d 441, 444 (Ind. Ct.App.1993), *reh. denied.* Although specific findings aid appellate review, they are not binding on this court. *Id.* Instead, when reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh evidence, but will consider facts in the light most favorable to the nonmoving party. *Reed. v. Luzny*, 627 N.E.2d 1362, 1363 (Ind.Ct.App.1994), *reh. denied, trans. denied.* We may sustain a summary judgment upon any theory supported by the designated materials. T.R. 56(C).

The trial court granted summary judgment for Ameritech Indiana because it found that the "requirements-based fee" imposed under Ordinance No. 6971 was void under Ind.Code § 36–1–3–8(a)(4) (1993) as a tax, which the City does not have the power to impose.[1] The trial court also found that several sections of the ordinances were void as violative of IC 36–1–3–8(a)(7), because they attempted to regulate conduct that is regulated by the Indiana Utility Regulatory Commission ("IURC").[2] Finally, the trial court struck down the remainder of the ordinances because they were not distinctly separable from the voided sections.

■ The City argues that its "requirements-based fee" is not a tax, as determined by the trial court, but merely a demand for rent from the providers for use of the City's rights-of-way.[3] We agree with the trial court. A careful reading of the City's ordinances reveals that the "requirements-based fee" cannot be characterized as rent. Section 2.5 of Ordinance No. 6971 defines its fee as "charges assessed to all telecommunications providers for access to the market or use of the public right-of-way." Record, 18. Black's Law Dictionary (6th Ed.1991) defines "rent" as "[c]onsideration paid for use or occupation of property." By the terms of its own ordinance, the City's fee is not limited to the provider's use of property, but also includes charges assessed for "access to the market." Further, the "requirements-based fee" is not related to any measure of usage or occupation of the City's rights-of-way. Rather, the total fee is calculated based on

1. IC 36–1–3–8(a)(4) prohibits a municipality from imposing a tax, except as expressly permitted by statute.

2. IC 36–1–3–8(a)(7) withholds from a municipality the power to regulate conduct that is regulated by a state agency, except as expressly granted by statute.

3. Pursuant to IC 36–1–3–8(a)(5), the City has authority to charge license fees. However, the amount charged may not exceed that "reasonably related to the administrative cost of exercising a regulatory power." Too, IC 36–1–3–8(6) provides that the City may not "impose a service charge or user fee greater than that reasonably related to reasonable and just rates and charges for services." The trial court found, and the City concedes, that its "requirements-based fee" is neither of the types of fees contemplated by these sections. Indeed, we note that the "requirements-based fee" bears no relationship to either the City's reasonable costs of regulation or the provider's usage of City services. In fact, the ordinances specifically leave intact existing municipal legislation regarding construction in the public rights-of-way, including acquiring permits, submitting maps, coordinating and restoring work associated with street cuts, and managing and sustaining traffic. Record, 15.

the City's requirements or on the providers' revenues. The total fee is then apportioned between the various telecommunications providers based on the kinds of services each provides, without regard to how much of the public right-of-way each provider occupies. In fact, the fee is assessed against telecommunications providers, such as cellular telephone providers, that may not use the public rights-of-way at all.

The City relies on *City of St. Louis v. Western Union Tel. Co.*, 148 U.S. 92, 97, 13 S.Ct. 485, 37 L.Ed. 380 (1893), *reh. denied.*, for its argument that the "requirements-based fee" is a rental charge rather than an impermissible tax. In *City of St. Louis*, the U.S. Supreme Court found that a charge imposed on telecommunications providers by St. Louis was a rental charge, rather than a tax. However, the charge at issue in *City of St. Louis* is distinguishable from the City's "requirements-based fee." St. Louis imposed a charge of five dollars per annum for each telegraph pole in the streets, alleys, and public places in the city for the privilege of using such streets, alleys, and public places. *Id.* at 95, 13 S.Ct. 485, 37 L.Ed. 380. In determining that the charge was a demand for rent, the U.S. Supreme Court recognized that St. Louis's fee was graduated by the amount of use and "not graduated by the amount of business, nor is it a sum fixed for the privilege of doing business." *Id.* at 97, 13 S.Ct. 485, 37 L.Ed. 380. Unlike the per-pole charge in *City of St. Louis*, the City's "requirements-based fee" is not based on amount of usage and, in fact, may be based on providers' amount of business. Too, the fee is assessed against providers who may not use the City's rights-of-way at all. Thus, we conclude that *City of St. Louis* is of little help to the City.

On the other hand, several features of the City's ordinances lead us to conclude that the "requirements-based fee" is a tax. First, the amount of the fee is calculated in one of three ways: (1) based upon an assessment of the City's requirements, (2) based upon a percentage not to exceed 15% of the providers' gross revenues, or (3) based upon a "growth factor" calculated from providers' telecommunications revenues multiplied by the previous year's "requirements-based fee." In *Village of Lombard v. Illinois Bell Telephone Co.*, 405 Ill. 209, 90 N.E.2d 105 (Ill.1950), the Illinois Supreme Court rejected a similar argument by the village of Lombard that its charge of 3% of gross revenues was a rental charge, and not a tax.

Second, one of the express purposes of Ordinance No. 6970 is to "[d]evelop a revenue generating concept and model." The revenue raised from the "requirements-based fee" is earmarked for the "restructure and support [of] City operations to incorporate information and telecommunications technology and to create and foster development of and provide public, education, and government access and an [sic] institutional network capabilities and functions for the residents of the City." In her letter to Ameritech Indiana informing it of its obligation under the ordinances, the Mayor's Chief of Staff stated: "The City hopes to establish, through these Ordinances, a telecommunications plant that will provide voice, video and data services throughout the community. We plan to start with City facilities and schools." Record, 39. In other words, the purpose of the "requirements-based fee" is to finance improvements to communications networks in the City's schools and government buildings—the type of improvements normally funded by tax revenues.

In *City of Portage v. Harrington*, 598 N.E.2d 634 (Ind.Ct.App.1992), Portage raised its license fee for boats docked along a waterway from $1.00 per foot of boat length to $75.00 per dock slip. The change was the result of a need to raise money to dredge the waterway and the extra revenue raised was to be used for that purpose. *Id.* at 636. This court held that the amount of the fee was not reasonably related to the costs of regulation and was, to the extent it exceeded the reasonable costs of regulation, an impermissible tax. In determining that the extra money raised by the $75.00 fee was a tax, we stated, "[i]n the case at bar, it is the purpose rather than the amount which leads us to conclude that the extra money raised by [Portage's ordinance] is unrelated to [Portage's] regulatory activities over Burn's Waterway." *Id.* at 638. Although

*City of Portage* dealt with license fees, rather then rental fees, we find its reasoning instructive. Here, the purpose of the City's ordinances leads us to the conclusion that its "requirements-based fee" is an impermissible tax.

■ Even if we were to conclude that the City's "requirements-based fee" could be characterized as rent, we hold that the City is without authority to charge the telecommunications providers rent for use of its rights-of-way. The City contends that, because municipalities exercise exclusive jurisdiction over municipal rights-of-way,[4] they are authorized to charge rent for the use of those rights-of-way. However, this exclusive jurisdiction is limited where "a statute provides otherwise." IC 36–1–3–9(a). In this case, IND.CODE § 8–1–2–101 (Supp.1998) limits a municipality's ability to charge public utilities rent with respect to its rights-of-way. IC 8–1–2–101 provides, in pertinent part:

(a) Every municipal council or county executive shall have power:

(1) To determine by ordinance the provisions ... upon which a public utility or department of public utilities created under IC 8–1–11–1 occupies the areas along, under, upon, and across the streets, highways, or other public property within such municipality or county, and such ordinance or other determination of such municipality or county executive shall be in force and prima facie reasonable....

(b) Subject to the commission's authority under subsection (a)(1) with respect to an unreasonable ordinance or other determination, the municipality or county executive may operate and maintain the streets, highways, and other public property in the municipality or county for the safety of the traveling public, and *a municipality or county executive may manage the public right-of-way or require by ordinance fair and reasonable compensation* on a competitively neutral and nondiscriminatory basis, including occupation by the municipality or county executive, if the compensation required

is publicly disclosed by the municipality or county executive. *Fair and reasonable compensation may not exceed the municipality's or county executive's direct, actual, and reasonably incurred costs of managing the public right-of-way caused by the public utility's or department of public utilities' occupancy.* The management costs, which the municipality or county executive shall assign individually to the public utility or department of public utilities creating the management costs, must be limited to the direct, actual, and reasonably incurred costs a municipality or county incurs in managing the public right-of-way.... *[D]irect, actual, and reasonably incurred management costs do not include rents, franchise fees, or any other payment by a public utility or department of public utilities for occupation of the public right-of-way.*

(emphasis added). While IC 8–1–2–101 expressly grants the City the right to collect fair and reasonable compensation for direct, actual, and reasonably incurred management costs via an ordinance, it expressly provides that rental charges are not such management costs. Pursuant to IC 8–1–2–101, the City lacks authority to pass an ordinance that unilaterally imposes a rental fee on telecommunications providers for their occupancy of public rights-of-way.

■■ The language prohibiting a municipality from collecting rent was added to IC 8–1–2–101 by emergency amendment in March, 1998. 1998 Ind. Acts 1522; Public Law 127–1998. Ordinances Numbers 6970 and 6971 were adopted in January, 1998. Thus, the City argues that IC 8–1–2–101, as amended, does not apply to the ordinances at issue. We disagree. The City's alleged rental fee conflicts with IC 8–1–2–101, as amended in 1998, and has been superseded by IC 8–1–2–101. A municipality cannot continue to enforce an ordinance that has been superseded by subsequent legislation of the General Assembly. *See Town of St. John v. Home Builders Ass'n of Northern Ind.,* 428 N.E.2d 1299, 1304–05 (Ind.Ct.App.1981) (local ordinance that conflicts with purpose of

---

4. IND CODE § 36–1–3–9 (1993).

subsequent state legislation invalid); *Suburban Homes Corp. v. City of Hobart*, 411 N.E.2d 169, 172 (Ind.Ct.App.1980) (statutory amendments are to be considered part of the original act, and the act as amended is to be given construction as if the amendment were part of the original).[5]

■ In addition to striking down the "requirements-based fee" as an impermissible tax, the trial court found that several sections of the ordinances were invalid under IC 36–1–3–8(a)(7) because they attempt to regulate conduct that is regulated by the IURC, including attempting to promote competition between providers and attempting to regulate the availability and affordability of service. Specifically, Ordinance No. 6970 adopts policies to guarantee universal access by all users (§§ 1.1, 3.1), to ensure that telecommunications services are available as a community resource for individuals, organizations, and businesses on an affordable basis (§ 3.2), and to create a competitive telecommunications market (§§ 1.1, 3.4). Ordinance No. 6970 also creates the GAITT and charges it with the responsibility of developing, implementing, managing and operating an organizational structure to promote competition between telecommunications service providers and encourage the universal availability of modern telecommunications services to all residents and businesses of the City (§ 5.4). Similarly, one of the purposes of Ordinance No. 6971 is to create and promote competition between telecommunications providers (§§ 1.1, 1.5).

The IURC is vested with jurisdiction to regulate virtually all facets of service, rates, charges, and competition with respect to public utilities.[6] The IURC determines who can provide service, where that service can and will be provided, and whether more than one telephone company should be authorized to serve in the same area to create a competitive environment. IND.CODE § 8–1–2–88 (1993). The IURC also determines whether

a telephone company's rates and charges are unjust and unreasonable. If such a determination is made, the Commission approves new, just and reasonable rates and charges. IND.CODE §§ 8–1–2–4, –42,–68 (1993). Further, the IURC regulates the relationship between a telephone company and its customers, IND.CODE § 8–1–2–34.5 (1993), and is charged with preserving universal telephone service to all customers in the face of increased competition. IND.CODE § 8–1–2.6–1 (Supp.1998).

While the City's ordinances contain language that refers to creating a competitive telecommunications environment and ensuring universal and affordable access to all users, a careful reading of the ordinances reveals that the City is not attempting to regulate conduct that is regulated by the IURC. The guarantee of universal access by all users on an affordable basis (Ord. No. 6970, §§ 1.1, 3.1, 3.2; Ord. No. 6971, § 5.4) refers to the City's plan, stated in Ordinance No. 6970, to provide affordable public, education, and government access to institutional network capabilities and functions for the residents of the City. It is access to and affordability of services as "a community resource" that the ordinances intend to provide. The ordinances do not contain either the objective or the means to regulate telecommunications providers' charges for service or the extent to which those providers provide service. Rather, the ordinances attempt to ensure that the City's charges to members of the community for access to the City's network are affordable. Likewise, although the ordinances speak to the promotion of a competitive telecommunications environment, they do not contain the means to regulate the providers' conduct. Therefore, we conclude that the City's ordinances do not violate IC 36–1–3–8(a)(7).

■ We have held that the entire portion of Ordinance No. 6971 that deals with the

---

5. The City further argues that, even if IC 8–1–2–101 as amended in March 1998 does apply to its ordinances, IC 8–1–2–101 only proscribes rental fees for a public utility's occupancy of its rights-of-way, not for the utility's use of its rights-of-way. We do not see a distinction between rent for occupancy and rent for use in this context.

6. As previously discussed, IC 8–1–2–101 reserves certain powers to municipalities with respect to utilities. Those powers are not involved in the current discussion of whether a city may regulate competition, availability and affordability of services.

imposition and collection of the "requirements-based fee" is unenforceable as a tax that the City does not have the authority to impose.[7] Thus, we affirm the trial court's grant of summary judgment for Ameritech Indiana with respect to those provisions. However, we have also held that Ordinance Numbers 6970 and 6971 do not attempt to regulate conduct that is regulated by the IURC, in violation of IC 36–1–3(8)(a)(7). Thus, we turn to the issue of whether those parts of the ordinances that we have not held invalid may stand pursuant to the severability clauses contained in both ordinances.

▮ Rules relating to statutory construction are to be applied in construing ordinances. *Hobble v. Basham,* 575 N.E.2d 693, 699 (Ind.Ct.App.1991). A basic rule of construction is that if one section of a city ordinance or legislative act can be separated from the other sections and upheld as valid, it is the duty of the court to do so. *Id.* Here, we note that execution of the remaining provisions may be difficult, given their dependance on the funding that was to be provided by the invalid tax. However, the City may decide to provide an alternative means of funding, in which case we can discern no reason why it would not be successful. Therefore, we hold that the trial court erred in granting summary judgment for Ameritech Indiana by striking down the non-fee provisions of the ordinances. We hold that summary judgment for the City is appropriate as it relates to Ordinance No. 6970 and the provisions of Ordinance No. 6971 that do not involve the "requirements-based fee."

Affirmed in part and reversed in part.

BROOK, J., and RILEY, J., concur.

7. This holding also encompasses the penalty provisions for nonpayment of the fee.