CITY OF GARY, INDIANA, Appellant (Defendant below),

v.

INDIANA BELL TELEPHONE COMPANY, INCORPORATED, d/b/a Ameritech Indiana, Appellee (Plaintiff below).

No. 45S03–0006–CV–393.

Supreme Court of Indiana.

June 30, 2000.

Rehearing Denied Sept. 25, 2000.

Gilbert King, Jr., Gary, IN, William Malone, Miller & Van Eaton, P.L.L.C., Washington, D.C., Attorneys for Appellant.

Stanley C. Fickle, Michael R. Fruehwald, Daniel W. McGill, Nicholas K. Kile, Barnes & Thornburg, A. David Stippler, Ameritech Indiana, Indianapolis, IN, James L. Wieser, Randy H. Wyllie, Wieser & Sterba, Schererville, IN, Attorneys for Appellee.

**ON PETITION TO TRANSFER**

SULLIVAN, Justice.

Ameritech Indiana sought declaratory and injunctive relief to prevent the City of Gary from imposing a "requirements-based fee" on telecommunications providers using City .rights-of-way. The trial court declared the fee void as an improper tax issued beyond the City's powers. We reverse in part, finding that the City was initially entitled to charge compensation for the private, commercial use of its real estate, until the legislature affirmatively said otherwise.

*Background*

On January 6, 1998, the City of Gary enacted Ordinance Nos. 6970 & 6971, which were signed by the Mayor two days later. Ordinance No. 6970 establishes a telecommunications policy for the City and creates the Gary Access, Information, and Telecommunications Trust ("GAITT") to, *inter alia*, "[e]nsure that telecommunications is available as a community resource for individuals, organizations, and businesses on an affordable basis." The GAITT is charged with several responsibilities under Ordinance No. 6970, including the development, implementation, and collection of fees comprising fair and reasonable compensation for the commercial use of public rights-of-way.

Ordinance No. 6971 is a companion ordinance that imposes a "requirements-based fee" on all telecommunications providers using the City's rights-of-way. The total "requirements-based fee" for 1998 was to be $20,000,000. This initial aggregate fee represented "approximately fifteen percent of the telecommunications providers' local revenues, based on the national average revenue per capita reported by the U.S. census," with credits for public, educational, and government access, as well as institutional access. Appellant's Br. at 6.

Ameritech Indiana's share of this total initial fee was $3.2 million and was determined by using what Ameritech characterizes as "an intricate scheme for apportioning the $20,000,000 charge among the various telecommunications providers in the rights-of-way, based on the number of kinds of services provided by each." Appellant's Br. at 7 (describing § 4 of Ord. No. 6971). Ordinance No. 6971 contemplates telecommunications providers discharging some or all of their "requirements-based fee" by furnishing in-kind telecommunications services. In future years, the total "requirements-based fee" would be calculated in one of three ways: (1) based upon an assessment of the City's "requirements," (2) based upon a percentage not to exceed 15% of the pro-

viders' gross revenues, or (3) based upon a "growth factor" calculated from the providers' telecommunications revenues multiplied by the previous year's "requirements-based fee."

On January 15, 1998, Arlene D. Colvin, the City's Chief of Staff, sent a letter to Ameritech Indiana along with copies of the two ordinances, informing Ameritech that Gary intended to establish "a process for telecommunications vendors affected by the enclosed Ordinances to meet their economic obligations." The letter also indicated that a City representative would contact the company "in February, 1998 to negotiate [its] contribution."

Before any meeting was held, Ameritech Indiana filed a declaratory judgment action, asking that the ordinances be declared void as exceeding the scope of the City's municipal powers. After hearing oral argument on cross-motions for summary judgment, the trial court granted summary judgment in favor of Ameritech Indiana, finding "that City of Gary Ordinances Nos. 6970 and 6971 are and have been from the time of their enactment INVALID and VOID in their entireties." (R. at 292; Final Judgment of June 25, 1998) (emphasis in original). The City appealed.

The Court of Appeals affirmed in part and reversed in part, finding: (1) that the requirements-based fee imposed under Ordinance No. 6971 was void as an impermissible tax assessed in violation of the City's authority under Ind.Code § 36–1–3–8(a)(4) (1993) ("Home Rule Act"); (2) that even if the requirements-based fee was not an impermissible "tax" under the Home Rule Act, it was an impermissible charge by the City as of March 13, 1998, when the Indiana Legislature amended Ind.Code § 8–1–2–101(b), prohibiting municipalities from receiving any form of "payment" other than the "direct, actual, and reasonably incurred management costs" for a utility's occupation of a public right-of-way; (3) that the remaining provisions of Ordi-

nances 6970 & 6971 did not violate Ind. Code § 36–1–3–8(a)(7) as infringing on the jurisdiction of Indiana Utility Regulatory Commission ("IURC"); and (4) that the remaining policy provisions of Ordinances 6970 & 6971 would stand despite invalidation of the revenue-producing, requirements-based fee provisions. *City of Gary v. Indiana Bell Telephone Co.,* 711 N.E.2d 79 (Ind.Ct.App.1999).

## Discussion

 In this case, the trial judge entered specific findings of fact and conclusions of law, neither of which are required nor prohibited in the summary judgment context. *See Dible v. City of Lafayette,* 713 N.E.2d 269, 272 n. 2 (Ind.1999). Although specific findings aid our review of a summary judgment ruling, they are not binding on this Court. *Id.* Instead, when reviewing an entry of summary judgment, we stand in the shoes of the trial court. *Id.* Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). We do not reweigh the evidence, but will consider the facts in the light most favorable to the nonmoving party. *See Perry v. Stitzer Buick GMC, Inc.,* 637 N.E.2d 1282, 1286 (Ind.1994), *reh'g denied.*

## I

██ We begin our analysis by looking to Indiana's Home Rule Act. Pub.L. No. 211, 1980 Ind. Acts 1657 (codified as amended at Ind.Code §§ 36–1–3–1 to –9 (1993)). The Home Rule Act abrogated the traditional rule that local governments possessed only those powers expressly authorized by statute and declared that a local government possesses "[a]ll other powers necessary or desirable in the conduct of its affairs." Ind.Code § 36–1–3–4(b)(2); *see also City of Crown Point v. Lake County,* 510 N.E.2d 684, 685–86 (1987) (construing the Home Rule Act). This broad grant of authority notwithstanding, the Home Rule Act also specifically withheld certain powers from local governments and reserved them to the State. *See* Ind.Code § 36–1–3–8.

Here, we are faced with deciding whether the requirements-based fee was within Gary's broad grant of powers conferred on it by the Home Rule Act or whether the fee impermissibly impinged upon those powers reserved to the State. The reserved powers implicated in this case are: first, the "power to impose a tax," *id.* § 36–1–3–8(a)(4); second, the "power to impose a service charge or user fee greater than that reasonably related to reasonable and just rates and charges for services," *id.* § 36–1–3–8(a)(6); and third, the "power to regulate conduct that is regulated by a state agency, except as expressly granted by statute," *id.* § 36–1–3–8(a)(7).

## II

██ Among the various powers "need[ed] for the effective operation of government as to [its] local affairs," Ind. Code § 36–1–3–2, are those labeled *proprietary* whereby local governments "act[ ] in a private or proprietary capacity" for the "peculiar and special advantage of its inhabitants, rather than for the good of the State at large," *Taylor v. State,* 663 N.E.2d 213, 216–17 (Ind.Ct.App.1996) (analyzing *Department of Treasury v. City of Evansville,* 223 Ind. 435, 440, 60 N.E.2d 952, 954 (1945)).

██ A local government's specified power to manage the "public grounds" falling within its borders, *see* Ind.Code § 36–1–3–9(a), includes the unspecified power to operate in a proprietary capacity to charge fair and reasonable compensation for the private, commercial use of these public grounds, irrespective of the label placed on the compensation. *See, e.g., City of St. Louis v. Western Union Tel. Co.,* 148 U.S. 92, 99, 13 S.Ct. 485, 37 L.Ed. 380 (1893) (recognizing the general right of a city to seek "rental"-like compensation from a

**154**

user of the city's land/right-of-way);[1] *City of Dallas, Texas v. Federal Communications Comm'n*, 118 F.3d 393, 397 (1997) (A fee imposed on a telecommunications provider was "not a tax ... but essentially a form of rent: the price paid to rent use of public right-of-ways [sic]."); *TCG Detroit v. City of Dearborn*, 16 F.Supp.2d 785, 789 (E.D.Mich.1998) (construing the Federal Telecommunications Act, 47 U.S.C. § 253(a), (c), and approving the imposition of a "franchise fee," requiring, *inter alia*, a percentage fee on gross revenue, costs, and conduit space for the city) (There "is nothing inappropriate with the [City of Dearborn] charging compensation, or 'rent', for the City owned property that the [plaintiff telecommunications provider] seeks to appropriate for its private use."), *aff'd*, 206 F.3d 618 (6th Cir.2000); *Bell-South Telecommunications, Inc. v. City of Orangeburg*, 337 S.C. 35, 522 S.E.2d 804, 806 (1999) (authorizing the City of Orangeburg to charge a "franchise fee" in exchange for granting BellSouth the "special privilege of using public streets to place its equipment in order to serve [the] City's residents and generate private profit"), *reh'g denied* ; *cf.* Federal Telecommunications Act, 47 U.S.C. § 253(a), (c) (Supp. II 1996) (This section does not affect the authority of a city to "require fair and reasonable compensation from telecommunications providers ... for use of the public rights-of-way.").

**A**

In determining that the fee was an improper tax, the trial court found it signifi-

cant that "Gary has offered no authority for the proposition that a municipality may charge rent for use of public rights of way by public utilities operating under certificates of territorial authority issued by the IURC." (R. at 289; Concl. of Law No. 4.) As we just explained, however, the Home Rule Act abrogated the traditional rule that local governments possessed only those powers expressly authorized by statute. *See* Ind.Code § 36-1-3-4(a)(1)-(3) ("The rule of law that a unit has only[ ] powers expressly granted by statute; [ ]powers necessarily or fairly implied in or incident to powers expressly granted; and [ ]powers indispensable to the declared purposes of the unit[ ] is abrogated.").[2]

Simply put, the City of Gary need not have the specific statutory authorization to charge companies compensation for commercial use of its real estate to generate private profit. *See* id. § 36-1-3-4(b)(2) (A governmental unit has all "powers necessary or desirable in the conduct of its affairs, even though not granted by statute."); *id.* § 36-1-3-4(c) ("[T]he omission of a power from [a statutory] list does not imply that unit lacks that power."); *cf. Department of Treasury*, 223 Ind. at 442, 60 N.E.2d at 955 (" 'When a municipal corporation engages in an activity of a business nature ... which is generally engaged in by individuals or private corporations, it acts as such corporation and not in its sovereign capacity ....' ") (omissions added) (quoting *City of Logansport v. Public Service Commission*, 202 Ind. 523, 177

1. As the United States Supreme Court observed:

 [W]hen there is a permanent and exclusive appropriation of a part of the highway, is there in the nature of things anything to inhibit the public from exacting rental for the space thus occupied? Obviously not. *Suppose a municipality permits one to occupy space in a public park, for the erection of a booth in which to sell fruit and other articles; who would question the right of the city to charge for the use of the ground thus occupied, or call such a charge a tax, or anything else except rental?* So, in like

manner, while permission to a telegraph company to occupy the streets is not technically a lease, and does not in terms create the relation of landlord and tenant, yet it is the giving of the exclusive use of real estate, for which the giver has a right to exact compensation, which is in the nature of rental.

*City of St. Louis*, 148 U.S. at 99, 13 S.Ct. 485 (emphasis added).

2. Moreover, "[a]ny doubt as to the existence of a power of a unit shall be resolved in favor of its existence." *Id.* § 36-1-3-3(b).

N.E. 249 (1931)). Therefore, we proceed to analyze this requirements-based fee to determine if it is valid under the Home Rule Act.

## B

The Court of Appeals invalidated the requirements-based fee as an improper tax on two independent bases with respect to the Home Rule Act. *See City of Gary,* 711 N.E.2d at 83; *see also* Conclusions of Law Nos. 3 & 4 (R. at 288–89).

## B–1

First, the Court of Appeals cites to a 50–year–old Illinois Supreme Court case for the proposition that a charge or fee assessed by the governing entity and *based upon a percentage of the payor's gross revenues* is a tax and not a rental charge. *City of Gary,* 711 N.E.2d at 83 (citing *Village of Lombard v. Illinois Bell Telephone Co.,* 405 Ill. 209, 90 N.E.2d 105 (1950)). We disagree and cite to the Court of Appeals's own decision in *Ace Rent–A–Car, Inc. v. Indianapolis Airport Authority,* 612 N.E.2d 1104 (1993), *transfer denied,* for the proposition that the revenue-based aspect of a municipal charge or fee does not *ipso facto* transform it into a tax.

In *Ace Rent–A–Car,* the governing entity was the Indianapolis Airport Authority ("IAA"), a municipal corporation empowered with the *specific*[3] authority to "'adopt a schedule of reasonable charges and to collect them from all users of facilities and services within the district.'" *Id.* at 1106 (quoting Ind.Code § 8–22–3–1 (1993)). As such, the IAA imposed "a fee upon all off-airport car rental companies, along with all off-site hotels, motels and parking lots for the privilege of using airport roadways to operate their shuttle services." *Id.* As the fee pertained to off-airport car rental companies, they "would be assessed a fee of 7% of all sales for the rental of automobiles to customers originating at the airport." *Id.* (internal quotations omitted).

Ace Rent–A–Car first challenged the validity of the percentage-based fee as being generally inconsistent with the type of user fee approved by this Court in *Evansville–Vanderburgh Airport Auth. Dist. v. Delta Air Lines, Inc.,* 259 Ind. 464, 288 N.E.2d 136, *enforcing* 405 U.S. 707, 92 S.Ct. 1349, 31 L.Ed.2d 620 (1972).[4] Ace contended that "the seven percent fee imposed by IAA is based solely on revenue the companies generate and is totally unrelated to their use of airport roadways and facilities." *Ace Rent–A–Car,* 612 N.E.2d at 1107. The Court of Appeals disagreed with this reasoning, cited several decisions from foreign jurisdictions, and upheld "fees based on the overall benefit a user derives from the existence of [an] airport." *Id.*

Ultimately, the court concluded that "the airport's very existence provides a marketplace from which Ace Rent–A–Car derives an economic benefit," so that a user fee "based on a percent of the rental sales of automobiles made to customers originating at the airport represents at least one fair, although imperfect, method of measuring 'use'." *Id.* at 1107–08 (relying in part on *Alamo Rent-a–Car v. Sarasota–Manatee Airport Auth.,* 906 F.2d 516, 519, 521–22 (11th Cir.1990), *cert. denied,*

---

3. In contrast to the City of Gary's numerous unspecified powers as a local governing unit under the Home Rule Act, the Indianapolis Airport Authority's powers as a municipal corporation are limited to those expressly identified in its enabling statute. *See* Ind. Code § 8–22–3–11(1)–(29) (1993).

4. In *Delta Air Lines,* this Court addressed the validity of a $1.00 airport user fee assessed by the Airport Authority against enplaning commercial airline passengers. The Court approved the charge as a valid user fee and observed the enabling statute granted the Airport Authority the "power to make the amount of a service charge or user fee depend on the extent of the use made of the facilities." 259 Ind. at 466, 288 N.E.2d at 137. Ace Rent–A–Car argued that this quoted language from *Delta Air Lines* limited the IAA's fees to expenses associated with general upkeep of the airport roadways.

498 U.S. 1120, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991) (deeming a broad construction of the term "use" as appropriate where the benefit derived by the user depended on the existence of the entire airport facility)).

Here, Gary rights-of-way provide a marketplace from which Ameritech derives an economic benefit, so that Gary's fee, based in part on a percentage of the company's gross revenues, is at least one fair, if imperfect, method of measuring Ameritech's use of Gary rights-of-way. The revenue-based aspect of the fee does not *ipso facto* transform it into a tax. *See id.* at 1108 ("We disagree with Ace Rent–A–Car that because the fee is based on revenue it is therefore transformed into a tax.")

Furthermore, as the Court of Appeals in *Ace Rent–A–Car* noted,

A tax is compulsory and not optional; it entitles the taxpayer to receive nothing in return, other than the rights of government which are enjoyed by all citizens. *Ennis v. State Highway Commission* (1952), 231 Ind. 311, 108 N.E.2d 687, 693. On the other hand, a user fee is optional and represents a specific charge for the use of publicly-owned or publicly-provided facilities or services. *Commonwealth Edison Co. v. Montana* (1981), 453 U.S. 609, 621–22, 101 S.Ct. 2946, 2955, 69 L.Ed.2d 884, 896–97, *reh'g denied,* 453 U.S. 927, 102 S.Ct. 889, 69 L.Ed.2d 1023.

*Id.; see also City of Orangeburg,* 522 S.E.2d at 806 ("Generally, a tax is an enforced contribution to provide for the support of government, whereas a fee is a charge for a particular benefit to the payer."); Black's Law Dictionary 1470 (7th ed.1999) ("[A] general tax . . . returns no special benefit to the taxpayer other than the support of governmental programs that benefit all . . . .").

Ameritech receives considerably more "than the rights of government which are enjoyed by all citizens," *Ace Rent–A–Car,* 612 N.E.2d at 1108, when it conducts business in Gary rights-of-way. The requirements-based fee is not a tax but instead is compensation, representing a specific charge assessed against Ameritech for its commercial use of Gary-owned rights-of-way to generate private profit.

### B–2

Next, the Court of Appeals invalidated Gary's requirements-based fee as an improper tax based on the City's *avowed purpose* to use the fee revenues "to finance improvements to communications networks in the City's schools and government buildings – the type of improvements normally funded by tax revenues." *City of Gary,* 711 N.E.2d at 83 (relying on *City of Portage v. Harrington,* 598 N.E.2d 634 (Ind.Ct.App.1992)).[5]

Having found that the requirements-based fee is not an impermissible tax but is instead valid compensation charged by Gary for the private, commercial use of its real estate, we find it unnecessary to consider the purpose for which the fee revenues will be used.[6] *Cf. City of Orangeburg,* 522 S.E.2d at 806 ("Where a municipality seeks to justify a charge as a

5. As noted, *infra,* in Part I.C, we agree that the City of Gary is not charging a licensing fee while "exercising a regulatory power." Ind.Code § 36–1–3–8(a)(5). As such, we find the reasoning contained in *City of Portage v. Harrington,* 598 N.E.2d 634 (Ind.Ct.App. 1992), and relied on by the Court of Appeals, to be inapplicable to this case.

6. As set forth under *Background, supra,* Ameritech apparently can avoid the payment of fees altogether given that the Ordinance contemplates telecommunications providers dis-

charging some or all of their "requirements-based fee" by furnishing in-kind telecommunications services. (Ordinance No. 6971; R. at 21–22.) *See also* Letter from Arlene D. Colvin, City of Gary Chief of Staff, to Stephen E. Powell, Director of Local Government Relations, Ameritech Indiana 1 ("Should excess capacity [or in-kind services] be limited or unavailable, but assistance with hard wiring buildings is available through your company's resources, either would be an alternative to strictly a cash payment.") (R. at 39.)

fee because the revenue generated by the charge is used for the payer's benefit, we will consider the fact that the revenue is placed in the municipality's general fund in deciding whether or not the payer specifically benefits from the imposition of the charge. *This factor is irrelevant,* however, where the benefit to the payer derives not from the municipality's use of the revenue but is a benefit given directly and solely to the payor in exchange for the fee.") (emphasis added).

Having determined that the requirements-based fee is not a tax, we now address what type of fee it is.

### III

Both parties to this appeal, as well as the trial court and Court of Appeals, were in agreement that the City of Gary's requirements-based fee is "neither of the types of fees contemplated by" the Home Rule Act. *City of Gary,* 711 N.E.2d at 82 n.3. While we agree that the City of Gary is not charging a licensing fee while "exercising a regulatory power," Ind.Code § 36–1–3–8(a)(5),[7] we disagree with the view that the requirements-based fee is not the type of "service charge or user fee"

contemplated by the legislature in Indiana Code § 36–1–3–8(a)(6).[8]

This Court previously considered the concept of a valid user fee in *Evansville–Vanderburgh Airport Auth. Dist. v. Delta Air Lines, Inc.,* 259 Ind. 464, 288 N.E.2d 136 (analyzing $1.00 airport user fee assessed by the Airport Authority against enplaning commercial airline passengers), *enforcing* 405 U.S. 707, 92 S.Ct. 1349, 31 L.Ed.2d 620 (1972). After acknowledging the Airport Authority's statutory power "[t]o adopt a schedule of reasonable charges and to collect the same from all users of facilities and services within the jurisdiction of the district," *id.* at 466, 288 N.E.2d at 137, Justice DeBruler, writing for the Court, offered the following rationale in upholding the validity of the user fees assessed only on enplaning commercial airline passengers and not on "all users" of the facilities:

> Users of the airport facilities *differ widely in the extent of their use and 'reasonable' charges for use, as required by the statute, would of necessity reflect those differences.* It is meaningless to say that 'all users' must pay the same amount of user fees, e.g., would the lessor of space for a barber shop pay the

---

**7.** We previously addressed the scope and extent of regulatory license fees as defined by Indiana Code § 36–1–3–8(5) in *Schloss v. City of Indianapolis,* 553 N.E.2d 1204 (Ind.1990), *reh'g denied:*

> Indianapolis grants licenses and exacts regulation-related fees for a wide variety of business activities: it licenses the right to run massage parlors, operate taxicabs, deal in secondhand goods, and sell beverages, flowers, and foods from carts. Each type of license is granted to a number of people in anticipation of competition among them. Every person wishing to engage in a licensed business must follow certain procedures set by ordinance and pay a fee. Indiana Code § 36–1–3–8(5) applies to this type of a set fee, one assessed against numerous people *in exchange for the opportunity to compete in the marketplace.*

*Id.* at 1207 (footnote omitted) (emphasis added). The City of Gary is without authority to charge Ameritech a fee "in exchange for the opportunity to compete in the marketplace" –

this would violate the Federal Telecommunications Act of 1996, 47 U.S.C. § 253(a) (Supp. II 1996) (invalidating state or local regulations that prohibit or have the effect of prohibiting the ability of any entity to provide telecommunications services). So while we agree with Ameritech's first contention that the requirements-based fee "is not related to the administrative cost of exercising any *regulatory powers,*" Appellee's Br. in Opposition to Petition to Transfer at 4 (emphasis added), we disagree with the company's seemingly contradictory contention that Gary "is not seeking to collect the 'requirements-based fee' in its proprietary capacity or through any contractual powers, but instead through its *regulatory powers* exercised by the ordinance," *id.* at 6 (emphasis added).

**8.** Subsection (6) reads that "a unit does not have ... [t]he power to impose a service charge or user fee greater than that reasonably related to reasonable and just rates and charges for services." Ind.Code § 36–1–3–8(a)(6).

same fee as the lessor of space for an airplane? Would the lessor of space for a restaurant pay the same user fee as a visitor to the airport? *The very concept of a 'user' fee implies that there are different uses that can be identified and the amount of the fee relates to that use.* *Id.* at 467, 288 N.E.2d at 137 (emphasis added).

We find this reasoning equally applicable in this case: providers of telecommunications services and consumers of those same services differ substantially in both their method and extent of use of city-owned rights-of-way [9] and "reasonable and just rates for charges for services," as required by Indiana Code § 36–1–3–8(a)(6), would of necessity reflect those differences. So while we offer no opinion as to whether the *amount* of Gary's requirements-based fee assessed against Ameritech is "reasonable and just" given the extent of Ameritech's use of Gary's rights-of-way,[10] we do find that the requirements-based fee is the type of "service charge or user fee" contemplated by the legislature under Indiana Code § 36–1–3–8(a)(6).

## IV

▮ Ameritech Indiana lastly contends that "Gary's ordinances are invalid because they impermissibly tread upon the exclusive domain of the [Indiana Utility Regulatory Commission ("IURC")]," which is vested with "jurisdiction to regulate *all* facets of service, rates and charges, and competition" concerning public utilities. Appellee's Br. at 27 (emphasis added).

As set forth in Part I, *supra*, the Home Rule Act does withhold from Gary the "power to regulate conduct that is regulated by a state agency, except as expressly granted by statute." Ind.Code § 36–1–3–8(a)(7). However, an earlier version of Indiana Code § 8–1–2–101(a) – effective when the ordinances were first enacted – provided Gary with an express grant of "power[ t]o determine by ... ordinance ... [the] terms and conditions ... upon which such public utility may be permitted to occupy the streets, highways, or other public property within such municipality." *Id.*[11] As such, Gary's ordinances did not impermissibly impinge upon those powers reserved to the IURC in violation of Indiana Code § 36–1–3–8(a)(7) (1993).

▮ Finally, if Ameritech Indiana finds the amount of Gary's requirements-based fee to be unreasonable, it has the complaint process before the IURC as contemplated by the remainder of Indiana Code § 8–1–2–101(a) (1993).[12] In our view, the

---

**9.** Both Ameritech and the citizens of Gary literally "use" the City's right-of-way while engaging in the act of either providing or consuming telecommunications services.

**10.** *See infra* Part IV.

**11.** The statute provided in relevant part as follows:

> Every municipal council shall have *power[ t]o determine by* contract, *ordinance,* or otherwise, the quality and character of each kind of product or service to be furnished or rendered by any public utility furnishing any product or service within said municipality and all other *terms and conditions,* not inconsistent with this chapter, *upon which such public utility may be permitted to occupy the streets, highways, or other public property within such municipality,* and such contract, ordinance, or other de-

termination of such municipality shall be in force and prima facie reasonable. . . .
Ind.Code § 8–1–2–101(a) (1993) (emphasis added).

This express authority to determine by ordinance the terms and conditions upon which utilities may utilize municipality property does not include the "express" authority to charge utilities compensation for their utilization of this property. *But see supra* Parts I & II (discussing the City of Gary's "unspecified" authority to charge compensation under the Home Rule Act).

**12.** Indiana Code § 8–1–2–101(a) (1993), continued as follows:

> *Upon complaint made by such public utility,* or by any qualified complainant, as provided in section 54 of this chapter, the commission shall set a hearing, as provided in sections 54 to 67 of this chapter, and if it

IURC is better qualified to make this type of reasonableness determination,[13] and therefore, has primary jurisdiction in this regard. *See Austin Lakes Joint Venture v. Avon Utilities, Inc.*, 648 N.E.2d 641, 645 (Ind.1995) (" 'No fixed formula exists for applying the doctrine of primary jurisdiction,' " but appropriate administrative agencies should not be passed over " ' "in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion." ' ") (quoting *Hansen v. Norfolk & Western Ry. Co.*, 689 F.2d 707, 710 (7th Cir.1982) (quoting in turn *Far East Conference v. United States*, 342 U.S. 570, 574, 72 S.Ct. 492, 96 L.Ed. 576 (1952))).

### V

These determinations notwithstanding,[14] we nevertheless agree with the Court of Appeals that Gary was without authority to charge the fee as of March 13, 1998. On this date, the Indiana Legislature amended Indiana Code § 8–1–2–101(P.L. 127–1998) by adding new subsection (b) to prohibit municipalities from receiving any form of "payment" other than the "direct, actual, and reasonably incurred management costs" for a utility's occupation of a public right-of-way. *See City of Gary*, 711 N.E.2d at 84–85 ("A

municipality cannot continue to enforce an ordinance that has been superseded by subsequent legislation of the General Assembly.").

The City of Gary emphatically argued both in its briefs and at oral argument that the 1998 amendment to Indiana Code § 8–1–2–101, adding subsection (b), only addressed "occupancy" of rights-of-way by utilities, thereby not preempting Gary's Home Rule powers to collect compensation for the "use" of rights-of-way.

However, in looking to the plain language of the statute – always our first line of inquiry – we cannot ignore the legislature's clear mandate that "direct, actual, and reasonably incurred *management costs do not include rents, franchise fees, or any other payment by a public utility* ...." Ind.Code § 8–1–2–101(b) (emphasis added). *See Poehlman v. Feferman*, 717 N.E.2d 578, 581 (Ind.1999) ("When a statute is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense.").[15]

In addition to this clear legislative prohibition against charging public utilities "any" form of payment, we also highlight the fact that both traditional and legal

shall find such contract, ordinance, or other determination to be unreasonable, such contract, ordinance, or other determination shall be void.
*Id.* (emphasis added).

**13.** For other situations where the IURC makes similar determinations, see, for example, Indiana Code § 8–1–2–68 (1998) ("Whenever, upon an investigation, the commission shall find any rates, tolls, *charges*, schedules, or joint rate or rates to be unjust, *unreasonable*, insufficient, or unjustly discriminatory, or to be preferential or otherwise in violation of any of the provisions of this chapter, the commission shall determine and by order fix *just and reasonable* rates, tolls, charges, schedules, or joint rates to be imposed, observed, and followed in the future in lieu of those found to be unjust, unreasonable, insufficient, or unjustly discriminatory or preferential or otherwise in violation of any of the provisions of this chapter.") (emphases add-

ed), and Indiana Code § 8–1–2–88.6(b) (1998) ("Access *charges* paid by an interexchange carrier for interconnection to local exchange facilities [(i.e., Ameritech)] must be *reasonable as determined by the commission.*") (emphasis added).

**14.** As set forth under *Background, supra*, City of Gary Ordinance No. 6971 implemented the requirements-based fee, effective January 8, 1998. (R. at 22.)

**15.** We disagree with Gary's claim that the "property *management powers*" it exercises over its rights-of-way as per Ind.Code § 36–1–3–9(a) (1993), *see* Appellant's Reply Br. at 3, are unaffected by the legislature's clear declaration that any property *"management costs"* Gary seeks to recoup will "not include rents, franchise fees, *or any other payment by a public utility.*" Ind.Code § 8–1–2–101(b) (emphasis added).

dictionaries invariably include the concept of "use" when providing multiple definitions for "occupy" or variations thereof. *See* Webster's Third New International Dictionary 1560 (1976) (defining *occupation* as "the actual possession and *use* of real estate"); Black's Law Dictionary 1106 (7th ed.1999) (defining *occupancy* as "[t]he *use* to which property is put") (emphasis added); *id.* (defining *occupation* as "[t]he possession, control, or *use* of real property") (emphasis added). As such, we decline Gary's invitation to distinguish between Ameritech's "using" rights-of-way and "occupying" them for purposes of avoiding a clear legislative mandate. *See Poehlman,* 717 N.E.2d at 581("Clear and unambiguous statutory meaning leaves no room for judicial construction.").[16]

### Conclusion

We therefore (1) grant transfer; (2) adopt and incorporate by reference that part of the Court of Appeals's opinion finding that (a) the requirements-based fee was an impermissible charge by the City as of March 13, 1998, when the Indiana Legislature amended Ind.Code § 8–1–2–101(b); (b) the remaining provisions of Ordinances 6970 and 6971 did not violate Ind.Code § 36–1–3–8(a)(7) as infringing on the jurisdiction of the IURC; and (c) the remaining policy provisions of Ordinances 6970 and 6971 would stand; (3) vacate the remainder of the opinion of the Court of Appeals; and (4) remand to the trial court with instructions to modify its order of June 25, 1998, in accordance with this opinion. Our decision is without prejudice to any rights Ameritech Indiana has preserved under Indiana Code § 8–1–2–101(a) (1993).

SHEPARD, C.J., and RUCKER, J., concur.

BOEHM, J., concurring in part and dissenting in part with opinion in which DICKSON, J., concurs.

BOEHM, Justice, concurring in part and dissenting in part.

I agree that the 1998 legislation discussed by the majority in Part IV of its opinion made clear that the revenue measures the City of Gary sought to impose were beyond the powers of the City. I respectfully dissent, however, from Parts II and III of the opinion insofar as they found these measures lawful before 1998.

The majority begins its opinion by describing the revenue raised by the ordinance as "a 'requirements-based fee' on all telecommunications providers using the City's rights-of-way." From this premise it concludes that: (1) the fee is a charge for use of the City's facilities (Part II.A); (2) the fee may be measured by revenue derived by the user, similar to a revenue-based fee paid by a car rental company to an airport for use of the airport's facilities (Part II.B); and (3) the fee is a "service charge or user fee" permitted by the Home Rule Act (Part III).

All of these conclusions hinge on the premise that the fee is in exchange for something, namely the use of the City's "rights-of-way." But, as the Court of Appeals pointed out, the ordinance imposes a fee on all telecommunications providers "for access to the market or use of the public right-of-way." *City of Gary v. Indiana Bell Tel. Co.,* 711 N.E.2d 79, 82 (Ind.Ct.App.1999). Presumably because failure to impose the fee on increasingly available wireless means of telecommunication via land and satellite-based systems would create an intolerable competitive situation, the City chose to impose the fee on all providers, irrespective of whether they make any use of a city right-of-way or not. We have a commonly understood word for a fee for "access to the market" within a given governmental unit. It is called a tax. *See Diginet, Inc. v. Western Union ATS, Inc.,* 958 F.2d 1388, 1399 (7th Cir. 1992) (Under Illinois law, "[i]f the fee is a

---

**16.** We also note that the legislature chose not to specifically define either "use" or "occupy" as those terms are used in Chapter 2. *See* Ind.Code § 8–1–2–1 (1998).

reasonable estimate of the cost imposed by the person required to pay the fee, then it is a user fee and is within the municipality's regulatory power. If it is calculated not just to recover a cost imposed on the municipality or its residents but to generate revenues that the municipality can use to offset unrelated costs or confer unrelated benefits, it is a tax, whatever its nominal designation.").

The majority relies on *Ace Rent–A–Car, Inc. v. Indianapolis Airport Authority,* 612 N.E.2d 1104 (Ind.Ct.App.1993), for the proposition that a tax "entitles the taxpayer to receive nothing in return, other than the rights of government which are enjoyed by all citizens" while "a user fee is optional and represents a specific charge for the use of publicly-owned or publicly-provided facilities or services." *Id.* at 1108 (citations omitted). The majority then observes that Ameritech "receives considerably more 'than the rights of government which are enjoyed by all citizens,' when it conducts business in Gary rights-of-way." 732 N.E.2d at 156 (citations omitted). This may be true of Ameritech, which operates a traditional telephone system over wires and poles in public rights-of-way. But it ignores the point that the tax is imposed on all telecommunications providers who pay for "access to the market," including those who receive no benefit that is not shared with the general public. I believe the Court of Appeals correctly held this "fee" beyond the power of the City under the Home Rule Act, and that the 1998 legislation, plainly a response to this measure, confirms that reading.

This ordinance reflects the City of Gary's efforts to find a creative means of enhancing its ability to further its stated goal of "economic revitalization of the City by bringing its residents into the information age through extension of Internet access and other computer-based services to all economic strata in the community." The wisdom of requiring such efforts to be approved at the state level is obviously debatable. The problems of financing mu-

nicipal government are enormous, and undoubtedly are not uniform throughout this diverse state. Having said that, whether a city may impose such a tax is a call for the legislature, and the General Assembly has spoken on it, in my view not only in 1998, but also beginning with the Home Rule Act in 1980.

DICKSON, J., concurs.